B. Leopold et al., Trading as Home Finance Company, Appellees, v. Universal Credit Company, Appellant.

Gen. No. 39,126.

Opinion filed May 19, 1937. Rehearing denied June 2, 1937.

Goldman, Allshouse & Healy, of Chicago, for appellant; Robert G. Dreffein, M. M. Loman and M. J. Hirschenbein, all of Chicago, of counsel.

Rothbart, Peterson & Rosenfield, of Chicago, for appellees.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

A judgment was entered in the circuit court of Cook county against the defendant, Universal Credit Company, for the sum of $1,738.50, plus interest, in a suit in trover commenced by the plaintiffs, B. Leopold, G. H. Leopold and S. M. Leopold, copartners, doing business as Home Finance Co., for the conversion of six automobiles, from which judgment this appeal is taken.

The complaint alleges that on October 9, 1934, the plaintiffs were the owners of six automobiles and on that day the automobiles were unlawfully and illegally seized and retained by the defendant; that the fair and reasonable market value of said automobiles at that time was $2,600; that plaintiffs have demanded the return of the same as the legal owners of each of said automobiles, but defendant has refused to do so.

Defendant answering denies specifically all of the statements and charges set forth in plaintiffs' complaint and prays to be discharged with costs.

The cause was tried before the court and jury and a verdict was returned in favor of plaintiffs for $1,738.50, plus interest of $130.39, making a total of $1,868.89.

The facts in this case, as disclosed by the evidence, are substantially as follows: The defendant Universal Credit Company, a corporation, was engaged in a finance business with offices in Chicago, Illinois; that C. G. Carpenter, doing business as Carpenter Motor

Co., was engaged in the business of buying and selling automobiles at Knox, Indiana; that the Universal Credit Co. had, prior to this time, financial dealings with the Carpenter Motor Co.; that B. Leopold, G. H. Leopold and S. M. Leopold, copartners, doing business as Home Finance Co., the plaintiffs, are also engaged in the finance business with offices at Rensselaer, Indiana; that prior to the bringing of this suit plaintiffs, from time to time, financed automobile transactions for the Carpenter Motor Co.

The facts as disclosed by the evidence further show that on May 21, 1934, Carpenter Motor Co. purchased from the Ford Motor Co., a 1934 Ford Victoria Sedan, Motor No. 18–897566, under a conditional sales contract executed by the Carpenter Motor Co., which for value received the Ford Motor Company assigned to the defendant; that the contract provided that the title is reserved in the vendor or assignee until the purchase price is paid and that the purchase price shall be paid at the office of the defendant 90 days after date; that shortly before the due date for the payment of the purchase price under the Ford Motor Company contract, Carpenter Motor Co. sold and delivered said Ford Victoria to Guy Sellers, as purchaser; that this latter contract of sale of the Carpenter Motor Co., for value received, gave title to the automobile to the defendant; that the defendant accepted this contract in exchange for its interest in the contract with the Ford Motor Company, which had theretofore been assigned to and held by it.

The evidence further shows that prior to the execution of the Seller's contract, C. G. Carpenter, doing business as the Carpenter Motor Co., sold to himself, as an individual, the same automobile by way of a conditional sales contract and assigned that contract, together with title to the car, to plaintiffs for value received.

The evidence further shows that the possession of the automobile was not delivered to either the plaintiffs or to the defendant in any of these transactions; that the Carpenter Motor Company, for the purpose of securing loans from the plaintiffs on five other automobiles, executed bills of sale to such cars to the plaintiffs, containing notes as part of the sale evidencing loans; that plaintiffs never had or received possession of any of those automobiles. Subsequently, one of these automobiles was sold by Carpenter Motor Co. to a farmer named McCoskey who lived near Knox, Indiana.

The evidence further shows that early in October, 1934, two checks issued to the defendant by the Carpenter Motor Co., one being for $1,050 and the other for $500, were returned stamped ''Not Sufficient Funds'' and the Guy Seller's contract was in default; that on October 8, 1934, the defendant sent its representative G. F. Allcott to the Carpenter Motor Co. at Knox, Indiana, and he discovered Carpenter had absconded and could not be found; that Allcott took possession of four automobiles there to which plaintiffs claimed title had been conveyed to them by bills of sale. Allcott also went to the farm of McCoskey and took possession of the automobile which was included in one of the bills of sale held by plaintiffs; that Allcott, after driving about with Guy Sellers in his car, took possession of it and Sellers protested claiming that the car was his own.

As to these cars that were taken by the defendant's agent, defendant did not claim to have any color of title and, without any legal process it took them wherever it saw them, apparently to protect its account for money loaned Carpenter Motor Company on other cars.

Defendant contended that plaintiff's title was not good as against their corporation and the plaintiffs

contend that the defendant was a mere tortfeasor with no color of title or any lien or any legal process and for that reason plaintiffs' title was as good as against defendant's general claim, whether recorded or not. The evidence shows that the day the agent of the defendant took possession of the cars defendant was notified that the plaintiffs had a claim to the automobiles by bill of sale, but the defendant took possession of the cars with the observation that he would rather have Carpenter owe money to the plaintiffs than to them.

When the cars and trucks were taken by defendant's agent from the showroom of the Carpenter Motor Co., they were stored in various garages in other towns in Indiana. A demand was made upon the defendant by the plaintiffs prior to the commencement of suit asking for the return of the cars, but defendant refused to turn the cars over.

Plaintiffs' Exhibit 1 is entitled "Conditional Sales Contract," executed on July 9, 1934, at Knox, Indiana, by the Carpenter Motor Co. by C. G. Carpenter, Mgr., as seller, and C. G. Carpenter, as purchaser. The contract recites that Carpenter Motor Co. sells to C. G. Carpenter the 1934 Ford Victoria in question for the sum of $746.54, payable as follows: $234 in cash on delivery of the car and the deferred balance of $512.54 in six monthly successive instalments commencing August 9, 1934, the first five for $20 each, and the balance of $412.54. The contract further provides that title to the automobile shall not pass to the purchaser until said contract, together with all interest, costs and charges shall have been fully paid in cash; that the loss, injury or destruction of said motor vehicle shall not release the purchaser from the payment of the contract; that the purchaser shall keep said motor vehicle free and clear of all liens and incumbrances; that if the seller shall at any time deem said contract,

said property or said debt unsafe or insecure, the whole amount remaining unpaid on said contract is by said purchaser admitted to be due and payable, and the seller may, at the seller's option, repossess the motor vehicle; that if default be made in the payment of any instalment on said contract, or if the purchaser shall fail or refuse to comply with any terms or conditions thereof, the balance of said contract shall become due and payable immediately at the election of the holder of said contract, and in any event, the seller, with the aid of any other person or persons, may take immediate possession of the motor vehicle without any liability on the part of the seller or seller's assignee; that the seller may sell said motor vehicle at public or private sale with or without notice to the purchaser and apply the proceeds of such sale after deducting expenses of delivery and repossession to the payment of the amount due from the buyer to the owner of the contract, and the owner of the contract shall have a right to sue for and collect any balance owing on said contract; that the purchaser of the contract shall have the right to purchase the motor vehicle at public sale, etc. On the back of said instrument is an assignment and repurchase agreement executed by the Carpenter Motor Co., by C. G. Carpenter, Mgr., on July 9, 1934, by which Carpenter Motor Co. assigns the conditional sales contract to the Home Finance Co., the plaintiff, also transfers title to the automobile described therein to said assignee, and agrees to repurchase from the Home Finance Co., the said automobile in accordance with the provisions of Carpenter Motor Co.'s protective agreement.

Plaintiffs further claim to title is based on their Exhibit 2, which is a bill of sale, executed September 8, 1934, by Carpenter Motor Co. by C. G. Carpenter, Mgr., and recites that the Carpenter Motor Co. for valuable consideration, grants, sells and transfers to

Home Finance Co., Ford Truck Motor No. 5158646 for $250 and a Ford Tudor Motor No. 316879 for $300. Directly below the signature of C. G. Carpenter and as part of the same instrument is a note for $550 executed by Carpenter Motor Co., by C. G. Carpenter, Mgr. dated September 8, 1934, payable 60 days after date to the order of the Home Finance Co. with 8 per cent interest from date. The note provides that in consideration of the acceptance of this note by the Home Finance Co., the Carpenter Motor Co. agrees that title to the property is and shall remain in the Home Finance Co. and its assigns until said note is paid; that upon default in payment of the note or interest thereon or breach of any covenant therein contained, or the use or attempt to sell, dispose of or incumber said automobiles or any other circumstance which would cause the payee or its assigns to believe said motor vehicle to be in jeopardy by reason of Carpenter Motor Co.'s possession of said automobiles, such note shall immediately become due without notice to anyone and the payee, or its assigns, may at their option retake the property. The Carpenter Motor Co. acknowledged that the motor vehicle is the property of the Home Finance Co. and agrees to hold the same at its sole risk as to all loss or injury for the purpose of storing said property at Carpenter Motor Co., to keep the automobile brand new, not to operate it and to return it to the Home Finance Co., upon demand, and that "The execution of this note shall be conclusive proof of the delivery of said property to the undersigned under the terms hereof."

Plaintiff's Exhibit 3 is another bill of sale and contains the same provisions as plaintiffs' Exhibit 2, except that it is dated September 22, 1934, and provides for the sale of a Ford Tudor, Motor No. 485061 for $300 and the note is dated September 22, 1934 for $300, due 30 days after date.

Plaintiffs' Exhibit 4 is another bill of sale dated September 14, 1934, from the Motor Co. to the plaintiffs and provides for the sale of a Ford truck BB5128972 for $250 and a Studebaker sedan E8 628, Serial No. 5081244 for $125, and the note is dated September 14, 1934, for $375, due 60 days after date.

The evidence further shows that checks were issued by the plaintiff made payable to the Carpenter Motor Co., as follows:

| | |
|---|---:|
| July 9, 1934 | $513.50 |
| September 8, 1934 | 550.00 |
| September 14, 1934 | 375.00 |
| September 22, 1934 | 300.00 |
| Total | $1,738.50 |

That amount being the amount of the verdict and judgment entered by the trial court.

There were six automobiles which the plaintiffs claim the defendant converted, two Ford Tudor coaches, two Ford trucks without bodies, one 1929 Studebaker sedan, and a 1934 Ford Victoria sedan. On the first five of these cars, the conveyances of title to plaintiffs, were made by virtue of Exhibits 2, 3, and 4. It is claimed as to five of these cars that the defendant had no claim to title, nor were they interested aside from being creditors of the company and, as before stated, the cars were seized without process of any kind.

It is claimed by defendant that the most the plaintiffs acquired was a chattel mortgage or equity interest in the five cars. In support of this they cite paragraph 8055, sec. 33–301 in Vol. 7, of Burns Annotated Statutes, 1926 (Indiana Statutes) relating to chattel mortgages, which was in force at the time the above instrument was entered into. It reads as follows:

"No assignment of goods by way of mortgage *shall be valid against any other person than the parties*

*thereto,* where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged as provided in case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, if he resides in this state, and if not a resident of this state, then in the county where said property is situated, within ten (10) days after the execution thereof.''

Defendant also cites the case of *Roudebush v. Nash,* 93 Ind. App. 283, 177 N. E. 335, wherein it is stated:

''Since 1843, our statutory law has contained a provision similar to that contained in our present statute requiring, where the possession of the goods mortgaged is not delivered to the mortgagee and retained by him, that a chattel mortgage be recorded within 10 days after its execution in order to be valid *against any person not a party thereto,* and our Supreme Court and this court have consistently held that there must be a strict compliance with the terms of the statute on the part of the mortgagee or no claim under the mortgage can be legally asserted against any person not a party thereto.'' (Citing cases.) We do not believe that the law cited by defendant and the cases apparently supporting the same are in point in the instant case.

Defendant contends that plaintiffs did not have title to any of the property on the ground that delivery of possession was not given to the plaintiffs at the time of the delivery of these bills of sale. Delivery of possession was not necessary, even at common law, to transfer the title to the goods sold. *Commonwealth Title Ins. & Trust Co. v. Gregson,* 303 Ill. 458, at p. 463, and cases there cited.

The Uniform Sales Act in force in Indiana since 1929, which is similar to the Illinois statute, provides

that title may pass without transfer of possession. Ill. State Bar Stats. 1935, ch. 121a, ¶ 21, § 18; Jones Ill. Stats. Ann. 121.22, wherein it is said:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Paragraph 22, section 19, Ill. State Bar Stats. 1935, ch. 121a; Jones Ill. Stats. Ann. 121.23, provides that unless a different intention appears, the following rules apply for ascertaining the intention of the parties:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

When the default occurred in these contracts, plaintiffs became invested with the right to the property therein described. When the Carpenter Motor Co. purchased the vehicles from the plaintiffs, subject to the condition that the title shall not pass until payment in full of the purchase price is paid, they had a lawful lien upon the said automobiles according to the terms of the conditional sales contract.

If, as counsel for defendant argues, the contracts between the plaintiffs and the Carpenter Motor Co. were unrecorded chattel mortgages (which they were not), yet the unrecorded chattel mortgages as between the parties were valid and, as between them, the title passes to the mortgagee. *Allcock v. Loy,* 100 Ill. App. 573; *McTaggart v. Rose,* 14 Ind. 230; *Reynolds v. Quick,* 128 Ind. 316.

Analyzing further defendant's contention, we believe the intent and purpose of these chattel mortgage acts was to protect innocent third persons who, for value, acquire rights in the property conveyed while the mortgage remains unrecorded. In the instant case, the defendant was a wrongdoer — a trespasser. Defendant had a general open account for money owing to them from the Carpenter Motor Co. They sent an agent who took possession of these cars, without any warrant or process of law, but simply took physical possession and thereby became a tortfeasor. We do not think that the Mortgage Act, or the law with relation thereto, was intended to protect such unlawful acts. Defendant had notice of the rights of the plaintiffs as information was given to the agent before he took possession of these cars that the plaintiffs had financed them and they understood that to mean that Carpenter Motor Co. held possession only under a conditional sales contract from the plaintiffs. So far as their taking possession of the cars after they had been sold to McCoskey, as well as the car sold and in the possession of Sellers, is concerned, they could not defend this unwarranted taking on the theory that they were protected by the Chattel Mortgage Act.

In the case of *Martin v. Dryden,* 1 Gilm. (Ill.) 187, the court at page 218 said:

"Who is a creditor, in the meaning of our recording acts? He is one who, without actual or constructive notice of a prior conveyance or incumbrance, institutes such proceedings, or takes such steps, as effect a lien on the land, before the recording of such conveyance or incumbrance, whether the debt be prior or subsequent to them, and whether the vendor, at the time of conveying or incumbering, had other property sufficient to pay the debt or not."

A case very similar to the instant case is that of *Allcock v. Loy,* 100 Ill. App. 573, wherein the court at page 575 said:

"The requirements of Sections 1, 2, 3, and 4 of the chattel mortgage act, apply only as to interested third parties, and do not in any manner affect the status of the parties to the instrument. Third parties who may avail themselves of the statute must have an interest in the property, such as that of subsequent purchaser, lienor, judgment creditor, or an officer, bailiff or custodian in possession by virtue of a valid writ, execution or warrant." *Sumner v. McKee,* 89 Ill. 127.

In Jones on Chattel Mortgages and Conditional Sales (Bowers Ed.), Vol. 1, sec. 237a, p. 386, it is said:

"An unrecorded mortgage is good as against tortfeasors, partners and creditors of a purchaser. A mortgage though not recorded vests the general property in the mortgagee, and, when there is no stipulation to the contrary, the right also to the immediate possession of the property; and therefore he may maintain an action of tort against one who, without any title, takes the property from the mortgagor's possession."

In Vol. 2, section 446, page 210, the said author, continuing, says:

"As against third persons the mortgagor's possession may be the possession of the mortgagee. . . .

"The mortgagee may maintain trover for conversion of the mortgaged property whilst it was in the possession of the mortgagor."

And continuing at sec. 447a, page 211:

"The right of action against a wrongdoer depends upon the plaintiff's title or possession. The registry acts do not affect the determination of the question, for in general they make an unrecorded mortgage void only as to purchasers without notice and as to creditors. A wrongdoer cannot invoke the protection of the statute as against a mortgagee entitled to possession.

"Even in Massachusetts, where the statute declares that an unrecorded mortgage is not valid against any

other person than the parties thereto, it is held that a mortgagee whose mortgage is not recorded may maintain an action of tort against one who, without title, takes the property from the possession of the mortgagor, if the mortgagee has, as against the mortgagor the right of immediate possession.''

In *Johnson v. Brown Bros. Iron & Metal Co.*, 208 Mo. App. 189, 231 S. W. 1011, the court quoting from *Landis v. McDonald*, 88 Mo. App. 335, said at page 339:

''Broad as this statutory phrase 'any other person' is, it does not apply to strangers; and one claiming the mortgage to be void must have some right to, or claim upon, the mortgaged property.''

In *Johnson v. Jeffries*, 30 Mo. 423, the court at page 425, said:

''It is a great misconception of the statute to so interpret it as to apply to all persons indiscriminately, except the parties to the instrument, and thus permit any third person, a trespasser or wrongdoer it may be, to invoke its aid.''

Two members of the Indiana Bar testified as to the law of the State of Indiana stating that in order for a general unsecured creditor to obtain priority over a mortgagee who has not recorded his mortgage, he must necessarily have to take some legal process against the specific property covered in the mortgage.

And in the words of one of the witnesses —

''He couldn't go out and say 'this mortgage is unrecorded; therefore, I have a prior lien?' ''

A similar case was before this court entitled *Western Suburban Finance & Thrift Co. v. Graham*, 285 Ill. App. 587, 3 N. E. (2d) 172 (Abst.). In that case it was held that the conditional sales contracts were valid contracts and that Falone was in possession of the fixtures as owner at the time the agreements were entered into and that even though plaintiff there never

acquired actual possession of the fixtures, Falone nevertheless remained in possession pursuant to the terms of the conditional sales contracts, which were valid and binding as between Falone and the plaintiff. Citing the *Sherer-Gillett Co. v. Long* case, 318 Ill. 432, and holding plaintiff's titles were good and plaintiff's conduct had not been such as to give rise to estoppel. Therefore, in the instant case, defendant could not deprive plaintiff of the cars or their value by forcibly taking and unlawfully maintaining possession of same.

Other questions were raised in the briefs, but we do not believe they are controlling in any sense.

From a review of the entire matter it appears that a fair trial was had and the jury was properly instructed as to the law. We are of the opinion that the defendant acquired no rights by its forceful and wrongful seizure of the cars in question. The plaintiffs should not have been deprived of their rights under their bills of sale and conditional sales contracts by such tortious action. The proof herein shows that the plaintiffs were deprived of the value of the cars by the wrongful action of the defendant and that their loss was the amount of said verdict, or even more, and that plaintiffs' cause of action should be sustained and the verdict approved.

For the reasons herein given the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HEBEL and HALL, JJ., concur.