Francis Mullen, Plaintiff-Appellee, v. Farm Bureau of La Salle County, Illinois, and R. L. Sutton and John Talbott, d/b/a Sutton Motors, a Partnership, Defendants, and Country Mutual Casualty Company, Defendant-Appellant.

Gen. No. 11,229.

Second District, Second Division.

April 17, 1959.

Released for publication May 5, 1959.

Pool & Langer, of Ottawa, for defendant-appellant.

Elmer Mohan, of Streator, for plaintiff-appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This suit was instituted by the plaintiff to recover the value of a new 1953 Pontiac automobile, which had been purchased by plaintiff from the defendant, Sutton Motors, and destroyed by fire while being driven to plaintiff's home by an employee of defendant, Sutton Motors. The defendant, Sutton Motors, was the dealer who had sold the automobile to the plaintiff, and the defendant, Country Mutual Casualty Company, was the insurer of a Plymouth automobile already owned by the plaintiff. This case was heard by a jury who returned a verdict of not guilty as to Sutton Motors, but as against defendant, Country Mutual Casualty Company, found the issues in favor of the plaintiff and assessed plaintiff's damages at the sum of Two Thousand Five Hundred Sixty Five Dollars and Thirty Cents ($2,565.30). Judgments were entered upon the verdicts.

This case comes to us on appeal by Country Mutual Casualty Company, hereinafter referred to as the defendant, from the judgment against it. Plaintiff has not appealed from the judgment entered on the verdict finding defendant, Sutton Motors, not guilty. Subsequent to the entry of the judgment, plaintiff filed a motion for an allowance of attorney fees, which motion was denied by the trial court and the plaintiff has taken a cross-appeal from such denial.

The plaintiff's Plymouth automobile was insured against loss by fire under a policy of insurance written by the defendant, Country Mutual Casualty Company. One of the principal points for determination by this court is the interpretation of a clause in the policy of insurance which is commonly referred to as the "automatic insurance clause."

The automatic insurance clause in standard liability policies is intended to meet the necessity for maintaining coverage, in the situation resulting from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of their policies. This clause in defendant's policy provided the following:

"Temporary insurance on newly-purchased vehicle:

"If the motor vehicle described herein is disposed of and another acquired in its place by the named insured, this policy shall without notice transfer to the newly-purchased motor vehicle for a period of thirty (30) days from date of delivery thereof, but this clause shall not extend or affect the expiration provisions of this policy."

On Saturday, January 9, 1953, plaintiff was contacted at his home near Ransom, Illinois, by Donald Brust, a salesman for Sutton Motors, a dealer for Pontiac automobiles, at which time Brust attempted unsuccessfully to sell a new 1953 Pontiac to the plaintiff. Sut-

283

ton Motors is located at Streator, Illinois, some twelve miles from Ransom. The next day, Sunday, January 10th, Brust again drove to the home of the plaintiff in the new Pontiac automobile and at that time an agreement was reached whereby plaintiff would trade his Plymouth to Sutton Motors for the new Pontiac and pay them a specified sum of money. It was agreed that the Pontiac was to be undercoated by the dealer and further agreed that Brust would take the new Pontiac back to Sutton Motors at Streator, have it undercoated and that the plaintiff was to call at the dealer's place of business the next day.

On Monday, January 11th, the plaintiff drove his truck to Sutton Motors, at which time he delivered to Sutton Motors a check for the balance of the purchase price of the Pontiac and the fee for transferring its certificate of title and license. The plaintiff transferred the title to the Plymouth to Sutton Motors and received a receipted invoice for the new Pontiac. It was agreed that plaintiff would return home in his truck and that later in the day Brust would drive the new Pontiac to the home of the plaintiff and pick up the Plymouth. Later that day, while Brust was driving the Pontiac automobile to the home of the plaintiff, it caught fire from an undetermined internal origin and was completely destroyed.

Defendant contends that at the time of the fire the title to the Pontiac had not passed from Sutton Motors to the plaintiff or in the alternative, that there had not been a sufficient delivery from Sutton Motors to the plaintiff within the meaning of the automatic insurance clause. Defendant further contends that the trial court committed error in refusing to give to the jury defendant's instructions numbered 3, 5 and 6 and in refusing to submit to the jury defendant's special interrogatory No. 2.

 There can be no dispute and in fact both parties agree that there was a binding and valid con-

tract to purchase and sell the Pontiac respectively upon the part of the plaintiff and Sutton Motors. We cannot agree with defendant's contention that the title of the Pontiac had not passed from the dealer to the plaintiff. The time of passing of title of an automobile sold is a question of the intention of the parties, 7 Blashfield Cyc. of Automobile Law & Practice, sec. 433, and in regard to the sale of personal property the title is transferred from the seller to the buyer at such time as the parties to the contract intend it to be transferred, Uniform Sales Act, Ill. Rev. Stat., Chap. 121½, Par. 18. Actual manual or physical change of possession is not necessarily essential for the purpose of passing title. Leopold v. Universal Credit Corp., 290 Ill. App. 305, 8 N.E.2d 727. After all of the transactions were completed at the Sutton Motors on Monday, January 11th, it seems quite apparent that it was the mutual intent of the parties that the title to the Plymouth automobile was transferred to Sutton Motors and the title to the new Pontiac automobile transferred to the plaintiff.

For the automatic insurance clause to be in effect, three events must occur: 1. The motor vehicle described in the policy must be disposed of. 2. Another motor vehicle acquired in its place and, 3. Delivery of the newly-purchased motor vehicle. For the reasons heretofore stated, it is our opinion that the first two requirements have certainly been met. The crucial determination is whether or not there has been a "delivery" within the meaning of the policy. In view of the express provisions of the automatic insurance clause that coverage of the new automobile commences on the date of its delivery, it is evident that such delivery is an essential prerequisite to coverage.

Counsel for plaintiff and defendant have not cited any Illinois cases interpreting the word delivery within the meaning of the automatic insurance clause and our own independent research has failed to reveal any.

285

The word delivery, which appears numerous times in automatic insurance clauses and which is of considerable importance in the construction of such clauses has, however, been the subject of judicial construction in several instances in sister states. Dean v. Niagara Fire Ins. Co., 24 Cal.App.2d 762, 68 P.2d 1021; Maryland Casualty Co. v. Toney, 178 Va. 196, 16 S.E.2d 340; Thompson v. State Automobile Mut. Ins. Co., 122 W. Va. 551, 11 S.E.2d 849; Blixt v. Home Mut. Ins. Co., 145 Neb. 717, 18 N.W.2d 78; Auto Lease Company v. Central Mutual Ins. Co., 7 Utah2d 336, 225 P.2d 264. Also see, 34 A.L.R.2d 941.

In the Dean case, supra, the court held that under an automobile indemnity policy insuring against liability of the owner occurring by reason of ownership of any automobile acquired by insured as replacement of automobile described in policy, as of date of delivery of replacement, evidence that insured was driving replacement automobile not yet registered in his name, but so registered subsequent to accident, was sufficient to support finding that the automobile was delivered to insured within contemplation of policy, notwithstanding statutory provision that no delivery should be deemed made until transfer of registration, since term delivery as used in policy signified handing over of physical possession and control of automobile.

In the Thompson case, supra, the court did not define the word delivery but rather dealt with the time of replacement. However, the court in interpreting the automatic insurance clause stated that such a provision extending insurance to a replacing automobile as of the date of its delivery to the insured, was inserted in the policy for the benefit of the insured, and under the liberal construction rule, every reasonable effort not amounting to change in phraseology would be invoked to secure benefit to insured.

The Supreme Court of Virginia in the Maryland Casualty Co. case, supra, stated that the purpose of the automatic insurance clause is to have coverage attach to the newly acquired automobile at the earliest time insured needs protection and protection is not delayed until insured has complete ownership or until title is registered in his name or until the newly acquired automobile is placed in service, but commences with delivery of automobile to insured.

In the Blixt case, supra, the court held that the automatic insurance clause was in effect from the date of acquisition of the new automobile notwithstanding the existence of infirmities in the automobile title.

The Supreme Court of Utah in the Auto Lease Company case, supra, stated that under a policy insuring five of insured's automobiles in his fleet and providing that, if insured acquired another automobile and so notified company within thirty days following delivery, policy applied to such automobile as of date of such acquisition if such automobile replaced an automobile described in policy, insured was not entitled to recover for loss of automobile which was intended to replace another automobile but which was lost during delivery while automobile to be replaced was still in service.

▇▇ The above cases dealing with delivery of a newly acquired automobile in relation to the automatic insurance clause, are helpful in construing the purpose of said clause but they are not factually in point with the case now before us. We cannot agree with the dicta in the Dean case, supra, that there must be a physical possession or the manual handing over of the vehicle in order to constitute delivery within the meaning of the automatic insurance clause. To constitute a delivery of any unwieldy or bulky article incapable of being handed over from the seller to the buyer, there need not be manual delivery of the article,

287

Vaughn v. Owens, 21 Ill. App. 249. The word delivery as used in the policy should be distinguished from the word deliver. Delivery means the act of releasing, a setting free, a surrender or transfer whereas deliver means a surrender or to carry and hand over to another. The Winston Dictionary, 1946 Edition.

■ ■ The transactions at the Sutton Motors on Monday, January 11th, certainly indicate that there was a delivery of the new Pontiac automobile to the plaintiff even though he did not take physical possession of it. The plaintiff gave to Sutton Motors a check for the balance of the purchase price for the Pontiac, signed over to him the title to his old Plymouth and paid the normal fee for transferring certificate of title and license. Sutton Motors then delivered to him a receipted invoice for the new Pontiac automobile. Since the plaintiff had driven to Streator, Illinois, in his truck it was agreed that the salesman, Brust, would drive plaintiff's newly purchased automobile to his home at Ransom, Illinois, and pick up the Plymouth. This was sufficient delivery to the plaintiff of the 1953 Pontiac automobile within the meaning and contemplation of the automatic insurance clause. The transactions having been completed and consummated at the Sutton Motors the new automobile was then the property of the plaintiff. The old Plymouth, sitting in plaintiff's garage at his home, was then owned by Sutton Motors, who only had yet to go to Ransom and take possession of it. Plaintiff could have left the Pontiac at the garage for two weeks before taking actual possession of it and if it had been destroyed in that length of time there could be no question that it would be his personal loss and not Sutton Motors. For all intents and purposes, the salesman, Brust, in driving the automobile to the home of the plaintiff was acting as the agent of the plaintiff. There are many situations and circumstances that would necessitate one delaying

taking physical possession of a newly purchased automobile and, in such case, there could be no doubt that the purchaser is the owner and if it were destroyed or damaged it would be his personal loss. The cases cited, supra, from sister states recite the established rule that it is the purpose of the automatic insurance clause that coverage attach to the newly acquired automobile at the earliest time the insured needs protection.

We have examined the jury instructions offered and given on behalf of both the plaintiff and defendant and conclude that the jury was properly instructed as to the law applicable in this case, and that the defendant was not prejudiced in any way by the trial court's refusal to give defendant's offered instructions numbered 3, 5 and 6. Considering all of the instructions as a series, the jury was properly and thoroughly instructed on the law to govern them in their deliberations. Likewise, there was no error in the refusal to give defendant's special interrogatory No. 2.

The order of the trial court in denying attorney's fees for the plaintiff is affirmed. The defendant's denial of liability under its policy for the value of the Pontiac was not vexatious or without reasonable cause. The trial court is allowed a discretion in the allowance of such attorney's fees and his order granting or denying such will not be reversed unless there has been an abuse of such discretion. Julian Foundry Co. v. Fidelity & Casualty Co. of New York, 4 Ill.App.2d 301, 124 N.E.2d 48; Ostrowski v. United States Fidelity and Guaranty Co., 4 Ill.App.2d 202, 124 N.E.2d 18.

For the reasons herein stated, the judgment of the Circuit Court of LaSalle County is affirmed.

Affirmed.

CROW and SOLFISBURG, JJ., concur.