COUNTRY MUTUAL INSURANCE CO., Plaintiff-Appellant, *v.* AETNA LIFE AND CASUALTY INSURANCE CO. *et al.*, Defendants-Appellees.—(JOHN D. TAYLOR, Indiv. and as Adm'r of the Estates of Scott Edward Taylor *et al.*, Deceased, Defendant-Appellant.)

Second District   No. 77-546

Opinion filed March 26, 1979.

Herman E. Stime, of Peregrine, Stime & Newman, and Lloyd L. Speer, of Popejoy & Speer, both of Wheaton, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is a suit to determine which of two insurance companies was the primary insurer of an automobile at the time of an accident.

In the early morning hours of Sunday, October 5, 1975, Scott Taylor and Kathleen Taylor were killed and Edward Van Poolen, Jr., was seriously injured when struck by an automobile operated by Donald Wittler. John Taylor, individually and as administrator of the estates of the Taylor children, and Edward Van Poolen, on his own behalf, filed lawsuits for damages against Donald Wittler. Country Mutual Insurance Co. (hereinafter Country Mutual) which had issued an automobile liability insurance policy to Wittler, tendered the defense of the damage actions to Aetna Life and Casualty Insurance Co. (hereinafter Aetna) on the theory that John Tiberi, Aetna's insured, was the owner of the auto operated by Wittler at the time of the occurrence and that Aetna's policy provided primary coverage on the auto and Country Mutual's policy was merely excess. When the tender offer was refused by Aetna, Country Mutual filed a declaratory judgment action, seeking to have the court declare the applicability of the respective policies. The trial court held that Wittler was the owner of the auto at the time of the accident and that, therefore, Aetna's policy did not provide coverage at the time of the accident. John Taylor and Country Mutual have appealed.

All parties agree that the sole determinative issue in this case is whether Tiberi or Wittler was the owner of the car at the time of the October 5 accident.

Prior to October 4, 1975, John Tiberi was the owner of the 1970 Ambassador station wagon in question. He had agreed to sell the car to Donald Wittler, who owned and operated the barber shop in which both men worked. The car was to be a down payment for Tiberi's purchase of the barber shop from Wittler. Both Tiberi and Wittler testified that on October 4 they discussed Wittler's using the station wagon to move some personal possessions. The decision was then made to transfer the station wagon on that day. According to Tiberi he brought the certificate of title into the shop, signed it, and left it on Wittler's back counter. Wittler acknowledged that Tiberi placed the certificate on the counter and indicated that he had seen it there but stated that he didn't know if it was signed or not. The parties attempted to reach a notary in order to notarize the change of title but were unsuccessful in doing so. Wittler gave Tiberi $1 for the car, in Tiberi's words, "to make it legal." Tiberi gave Wittler the keys, and Wittler took possession of the station wagon after work. Wittler's testimony at trial included the following exchange.

"Q. So, as far as you were concerned, that car was yours on Saturday, October 4th, isn't that correct?

A. Okay. Correct."

Because Wittler stated that he was in a hurry, Tiberi left some of his possessions in the station wagon and also left the license plates on it. Wittler said that he would return the possessions and change the plates the next morning, October 5. Before this was done, Wittler and the car were involved in the accident in question. Tiberi's signature on the title was not notarized until Tuesday, October 7, 1975, and the barber shop was not transferred to Tiberi until late October or November of that year.

The evidence with regard to what occurred after the accident on October 5th reflects a number of apparent contradictions involving, *inter alia*, a clearly improper attempt by Tiberi's insurance agent to misrepresent the facts to various investigators. We will not discuss these later events in detail because they do not directly affect whether the auto changed hands on October 4. That Tiberi's insurance agent and perhaps others lied in an attempt to lead others to believe that the title had been notarized on October 4 does not mean that ownership did not, in fact, change on that day, and the key as to whether the transfer occurred on the 4th is what happened on or before the 4th.

Appellants contend that the trial court erroneously decided that ownership of the automobile on October 4 was dependent primarily on the intention of Tiberi and Wittler on that date, and that even if the intention of the parties was determinative on the issue of ownership, the

trial court's decision that the intention was to pass ownership on the 4th was against the manifest weight of the evidence.

Appellants argue that section 3—112(e) of the Motor Vehicle Act and not the intention of the parties is determinative of when ownership passes. This section provides:

> "*Except* as provided in Section 3—113 and *as between the parties* a transfer by an owner is not effective until the provisions of this Section and Section 3—115 have been complied with; however, an owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this Section and Section 3—115 requiring action by him is not liable as owner for any damages thereafter resulting from operation of the vehicle." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 95½, par. 3—112(e).)

Appellant argues that this section had not been complied with and that therefore the previous owner was still liable as of October 5, 1975.

Appellee contends that section 3—312(e) is not controlling in this case and claims that ownership of the vehicle passes to the buyer on delivery unless otherwise agreed. See Ill. Rev. Stat. 1975, ch. 26, par. 2—204.

■■ Both a plain reading of section 3—112(e) of the Motor Vehicle Act and consideration of the cases decided thereunder support appellee's position that section 3—112(e) is not controlling here. The section begins with exceptions, including "Except * * * as between the parties." The question in the instant case is "between the parties"; it goes only to which of them owned the car on October 4. Moreover, the latter part of section 3—112(e), relied upon by appellant, goes only to when a previous owner is no longer liable and does not purport to define when a previous owner remains the owner for purposes of insurance coverage.

In *Perry v. Saleda* (1975), 34 Ill. App. 3d 729, 340 N.E.2d 314, a seller and buyer entered into an agreement for the sale of an automobile. The buyer had paid the agreed purchase price. The seller signed the title, had the assignment notarized, delivered the car to the buyer's place of employment, removed the license plates and delivered the keys and title papers to an insurance agent located on the buyer's employment premises. The next day the buyer was involved in an accident. The buyer had not yet applied for a new certificate of title so the title was still in the seller's name. At issue was whether the seller's insurance company was obligated to defend and indemnify the buyer as a permissive user. The Third District Appellate Court held that ownership had passed to the buyer and that, therefore, the seller's insurance company was not liable. Considering the effect of section 3—112 of the Motor Vehicle Act, the court stated that

> " * * * registry of title is not conclusive on the issue of when

transfer of ownership of an automobile occurs. The time of passing of title is a question of the intention of the parties." 34 Ill. App. 3d 729, 737, 340 N.E.2d 314, 321.

*State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894, 365 N.E.2d 1329, also articulates the rule that ownership of a vehicle is determined by the intentions of the parties. The court there noted that " * * * one can own an automobile though the certificate of title is in the name of another" (50 Ill. App. 3d 894, 898, 365 N.E.2d 1329, 1332), and we, ourselves, have held that the time of passing of title is a question of the intention of the parties in *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280, 157 N.E.2d 679.

■■ Appellants' other contention, that the trial court's decision as to the parties' intent was against the manifest weight of the evidence, is also without merit.

The standard test on the sufficiency of the evidence is that the appellate court will not disturb the judgment of the trial court unless it is against the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Appellants suggest that we use a different standard of review in the instant case. They point to the large number of depositions involved and contends that an appellate court is equally competent to examine documentary evidence, such as depositions, and that, therefore, the trial court's determination should not be accorded the usual weight. (See *Inter-Insurance Exchange of Chicago Motor Club v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518.) We see no reason to rule directly on the logic of this suggestion as an abstract point of law as in the instant case both Tiberi and Wittler testified at the trial. The depositions were used for impeachment purposes. Since the trial court judge had an opportunity to see, hear and judge the credibility of Wittler and Tiberi, he was in a superior position to judge their credibility, and the standard "manifest weight" test is applicable here.

Appellants finally contend that there was no credible evidence to support the trial court's conclusion of an intent to sell on October 4, alleging that

> "* * * the conduct of Tiberi, Wittler and Aetna agent Berg * * * was so tainted with deliberate lies, planned deceit and the perpetration of a hoax, that it was tantamount to a fraud upon the court.

The record contains no basis for the court to assume as true the orchestrated story line adhered to by Tiberi and Wittler to the effect that for some time prior to the occurrence they had planned to enter into the sale-purchase transaction concerning the barbershop. As a matter of fact, every reason existed for the court

to conclude that the sale-purchase deal was as much a fabrication as all of their other testimony."

We cannot agree that the testimony of the witnesses has been so contradicted as to totally destroy its credibility. The parties were forthright in admitting, at least at trial, the essential elements of their fraudulent notarization scheme. Although, as the trial court noted, "most of the testimony of the witnesses was impeached by prior statements of other witnesses," the testimony of Tiberi and Wittler with regard to their actions prior to and on October 4 is reasonably consistent on certain key elements. The parties testified that they had agreed to sell the car on Saturday, October 4. Tiberi testified that he signed the title on Saturday, both men agreed that they attempted to have it notarized on Saturday but were unable to do so. A dollar changed hands, apparently in order to formalize the sale in some fashion. Wittler drove off in the car, believing it to be his. These facts sufficiently demonstrate an intent to complete the sale and provide ample evidence to support the decision of the trial court.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

WOODWARD and SEIDENFELD, JJ., concur.