THOMAS FINNAN *et al.*, Plaintiff, *v.* WILLIAM JOHNSON, Defendant and Third-Party Plaintiff-Appellee.—(Mid-America Fire and Marine Insurance Company, Third-Party Defendant-Appellant.)

Second District No. 82—287

Opinion filed January 6, 1983.

LINDBERG, J., specially concurring.

Peter K. Wilson, Jr., and Irving J. Ochsenschlager, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

Charles G. Brown, of Boyle, Cordes, Witheft & Brown, and Roger W. Hayes, both of De Kalb, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Mid-America Fire and Marine Insurance Company (Mid-America) appeals from the trial court's granting of summary judgment to third-party plaintiff, William C. Johnson (Johnson), on his complaint which alleged that Mid-America refused to defend a lawsuit against Johnson and denied liability coverage of Johnson in the accident which was the subject of the lawsuit against him. Mid-America contends on appeal

that the decision of the trial court is against the clear and manifest weight of the evidence.

This cause visits the appellate court for the second time. In the first appeal, this court determined in a Rule 23 order (87 Ill. 2d R. 23) that the trial court had incorrectly entered summary judgment in favor of Johnson and against Mid-America. (*Finnan v. Johnson* (1981), 98 Ill. App. 3d 1203 (Rule 23 order).) This court remanded the cause for further proceedings to resolve a material issue of fact concerning the date that Johnson acquired ownership of a 1965 GMC truck. Upon remand, and after holding an evidentiary hearing, the trial court again entered judgment in favor of Johnson and against Mid-America after making the required factual determination. The court below concluded that Mid-America was required to defend Johnson because the GMC truck qualified for coverage under the newly acquired vehicle provisions of the insurance policy in question.

Mid-America issued an insurance policy to Johnson for his 1972 Chevrolet and his 1972 Capri. The policy extended for a six-month period; it became effective on February 1, 1977, and was to expire on August 3, 1977. However, the policy was renewable for successive six-month periods upon payment of a renewal premium. Johnson renewed the policy for an additional six months prior to the August 3, 1977, expiration date.

The insurance policy in question contained a provision (Condition 5) entitled "Automatic Insurance on Newly-Acquired Vehicle," which stated in pertinent part:

> "The insurance coverage of this policy with respect to the vehicle described in the Declarations shall also apply to an additional vehicle of which the Named Insured or spouse acquired ownership evidenced by certificate of title thereto. If the vehicle acquired is a motor vehicle as defined in Section I this paragraph shall apply if the newly acquired motor vehicle was acquired for the same use as a motor vehicle described in the Declarations and, provided further the Company insures all vehicles and automobiles owned by and titled to the Named Insured or spouse.
>
> The terms of the two preceding paragraphs apply provided notice of delivery of such vehicle to the Named Insured or spouse is given to the Company within the policy period then current, or if delivery is less than thirty (30) days prior to the end of such period, then within thirty (30) days after delivery. This General Condition 5 shall not extend or affect the expiration provisions of this policy. The named Insured shall pay any

additional premiums required for such insurance afforded from date of delivery of such vehicle."

In July 1977, Johnson negotiated with Mark List for the purchase of a 1965 three-quarter ton, GMC pickup truck. List signed over title to the truck to Johnson on July 25, 1977, and the transfer of title document was notarized at that time. On that same day, Johnson applied for a title and license plates; the Secretary of State's office received the application on July 28, 1977, and issued the certificate of title to Johnson on August 10, 1977.

Johnson testified at the hearing held upon remand that he gave List $400 for the truck on August 8, 1977, and that the parties had intended that the truck would become Johnson's when he paid List for it. The truck, which was totally inoperative due to a "blown engine," was located at a garage of a third party, who was a friend of both Johnson and List. In September 1977, Johnson began working on the vehicle; he replaced the ruined engine with a good one, did some repair work on the brakes, and painted the truck. The repairs were completed and the vehicle became drivable in November 1977, at which time Johnson removed it from the friend's garage to his own home.

On December 17, 1977, Johnson was involved in an automobile accident while driving the truck. He gave notice of the accident to Mid-America on December 19, 1977. Subsequently, the plaintiffs, Thomas Finnan, driver and owner, Sandra Finnan and Grace Myers who were passengers in the other vehicle involved in the collision, brought lawsuits against Johnson. Thereafter, Johnson sued Mid-America and sought a declaration that the insurance policy which covered his Chevrolet and Capri also extended to his GMC truck. In response, Mid-America filed a motion for summary judgment in which it claimed that Johnson's truck was acquired prior to July 28, 1977, that is, less than 30 days before the policy's expiration date of August 3, 1977, and that no notice of this acquisition had been given to Mid-America within 30 days of acquisition as required by the insurance policy. The trial court denied Mid-America's motion for summary judgment.

Johnson then filed a motion for summary judgment in which he claimed that he paid for and took constructive possession of the GMC truck on August 7, 1977, and that because this acquisition occurred within the policy period of August 3, 1977, to February 3, 1978, his notice to Mid-America on December 19, 1977, complied fully with the provisions of the insurance policy, which required that notice be given to Mid-America before the end of the policy period. As previously noted, the trial court granted Johnson's motion for summary judg-

ment, and this court reversed the entry of summary judgment and remanded the cause for further proceedings.

After conducting the evidentiary hearing upon remand, the trial court found, in a letter of opinion, that Johnson and the seller (List) had intended that the sale of the truck would not be final until the payment of the purchase price, which occurred on August 7, 1977, and, therefore, concluded that Johnson did not acquire ownership prior to August 3, 1977. The trial court also noted that the Secretary of State did not issue title to Johnson until August 10, 1977. In addition, the court found that the truck was in an inoperative condition when Johnson acquired it and was incapable of being used as a vehicle of transportation prior to November 1977.

The issue therefore presented is whether the trial court's finding that Johnson had not acquired ownership of the truck prior to August 3, 1977, and its conclusion that the truck was covered under the newly acquired vehicle provision of the insurance policy is against the manifest weight of the evidence or contrary to law.

Mid-America contends on appeal that the evidence adduced in this cause established that Johnson acquired ownership of the 1965 GMC truck for purposes of insurance coverage on July 25, 1977. If Johnson acquired ownership of that vehicle on July 25, 1977, then he could obtain insurance coverage for it under the newly acquired vehicle provision of his insurance policy only if he gave Mid-America notice of the acquisition within 30 days of delivery. Johnson sent the required notice on December 19, 1977. Mid-America claims that the transfer of title from List to Johnson and Johnson's application for title and license plates, both of which occurred on July 25, 1977, indicate conclusively that, under the applicable provisions of the insurance policy, Johnson acquired ownership of the truck on the date of those occurrences.

■ It is axiomatic that the question when ownership has passed from one person to another for purposes of insurance coverage is a question of the intention of the parties. (*Allstate Insurance Co. v. Elliott* (1980), 89 Ill. App. 3d 140, 143.) Where conflicting interpretations may be drawn from the evidence regarding at what point a party acquired ownership of a motor vehicle, a court of review will not disturb the decision of the trial court unless it is patently wrong (See *Country Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 79), or contrary to the manifest weight of the evidence (see 89 Ill. App. 3d 140, 143).

In support of its contention that Johnson acquired ownership of the automobile on July 25, 1977, when List signed over or transferred

title to him, Mid-America relies heavily upon *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280. A significant factor present in *Mullen* is absent, however, from the present case. In *Mullen,* unlike the case at bar, the prospective buyer had also paid for the car at the time title was signed over to him. (21 Ill. App. 2d 280, 284.) Thus, *Mullen,* is factually distinguishable from the case now before the court and, therefore, should not, in our opinion, control the present situation.

■ Our review of other relevant cases indicates that while the transfer of title is a factor which the court considers in arriving at a determination regarding ownership or delivery, that fact alone is not dispositive or conclusive evidence that ownership has passed. See, *e.g., Allstate Insurance Co. v. Elliott* (1980), 89 Ill. App. 3d 140, 143; *Country Mutual Insurance Co. v. Aetna Life & Casualty Insurance Co.* (1979), 69 Ill. App. 3d 764, 767-69; *State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894; *Perry v. Saleda* (1975), 34 Ill. App. 3d 729; *Illinois National Insurance Co. v. Trainer* (1971), 1 Ill. App. 3d 34, 37; *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280, 284.

■ In the present case, Johnson's uncontroverted testimony indicated, and the trial court expressly found, that Johnson and List had intended that ownership of the truck would pass with the payment of the purchase price, an event which occurred on August 7, 1977. Unlike the cases cited in the paragraph immediately above, here Johnson did not acquire actual possesion of the vehicle prior to the date of payment; did not begin to repair the vehicle until after he paid the purchase price; and paid the purchase price after the transfer of title had taken place and after he had applied for a new, corrected title and license plates. Furthermore, there was no evidence presented at trial that the parties to the transaction contemplated that ownership would be transferred prior to the payment of the sales price. We point out that Johnson's testimony that the buyer and seller intended that ownership would pass with the payment of the purchase price was not contradicted. See *Allstate Insurance Co. v. Elliott* (1980), 89 Ill. App. 3d 140, 143, a case which is factually distinguishable from the present one for the reasons that (1) there the controverted evidence was that the parties intended ownership to pass with transfer of possesion, and (2) there was an adverse admission regarding ownership.

Based on the totality of the facts of the present case, we cannot say that the trial court's finding that Johnson did not acquire ownership before August 3, 1977, is against the manifest weight of the evidence. We believe there is ample evidence to support that finding as well as the concomitant conclusion that the 1965 GMC pickup truck

was qualified for coverage under the newly acquired vehicle provision of the policy, because Johnson notified Mid-America of his ownership of the vehicle on December 19, 1977, a date which fell within the six-month period (August 3, 1977, to February 3, 1978) of the then-existing coverage.

It appears that the trial court based its decision, in part, on the fact that the truck was inoperative at the time it was purchased and remained in that condition until November 1977, by which time Johnson had installed a functioning engine in the vehicle. The trial court, citing *Quick v. Michigan Millers Mutual Insurance Co.* (1969), 112 Ill. App. 2d 314, 319, concluded that a nonoperating automobile, such as the GMC truck, was not considered an automobile under the terms of the newly acquired vehicle provision of the insurance policy.

■ In *Quick v. Michigan Millers Mutual Insurance Co.* (1969), 112 Ill. App. 2d 314, 319, the court reviewed the relevant case law from other jurisdictions. Based on that review, it devised the general rule that if the nonoperating condition were deemed temporary, then the vehicle would be considered an automobile for purposes of insurance coverage; on the other hand, if the inoperative nature of the car was viewed as permanent or of long duration with little possibility that the vehicle could be restored to a condition where it could be driven on the roads, then the vehicle would not be considered an automobile under the provisions of the insurance policy. In accordance with that decision, we determine that where, as here, the car is temporarily inoperative and is being repaired for use in the near future, it falls within the term "automobile" for purposes of the particular provision of the insurance policy. See *Luke v. American Family Mutual Insurance Co.* (8th Cir. 1973), 476 F.2d 1015, 1018, *cert. denied* (1973), 414 U.S. 856, 38 L. Ed. 2d 105, 94 S. Ct. 158, citing *Williams v. Standard Accident Insurance Co.* (1958), 158 Cal. App. 2d 506, 322 P.2d 1026.

■ In *Illinois National Insurance Co. v. Trainer* (1971), 1 Ill. App. 3d 34, 37-38, the court clearly rejected the theory that a car is not "acquired" until made operative. The court held that a car was acquired for purposes of a newly acquired vehicle insurance provision when the insured purchased it, received a bill of sale and assignment of title, and towed it to her home, even though it was a "wreck." According to that decision, Johnson's truck came within the newly acquired vehicle provision of his insurance policy prior to the time it was ultimately repaired and put into working order in November 1977.

We are of the opinion, however, that neither the rationale of

*Quick* , as applied to the facts of the present case, nor the result of *Trainer*, changes the decision which the trial court reached in the present case, because the fact remains that Johnson did not "acquire ownership" of the truck until after August 3, 1977. Thus, even if the inoperative condition of the truck was not a proper factor for the trial court to rely upon here, the trial court's implicit finding that Johnson's notice of ownership to Mid-America was timely and its conclusion that the truck qualified for insurance coverage under the newly acquired vehicle provision were nonetheless correct and dispositive of the present case.

The trial court's finding that Johnson had not acquired ownership of the truck prior to August 3, 1977, was not contrary to the manifest weight of the evidence and the judgment of the circuit court of De Kalb County is affirmed.

Judgment affirmed.

NASH, J., concurs.

JUSTICE LINDBERG, specially concurring.

I agree with the majority's disposition of this case. However, there is a language problem which should be noted. A reading of the policy language quoted in the majority opinion reveals that "delivery" is the essential occurrence for the purpose of deciding when notice must be given the insurer.

The majority here (as did the parties, the trial court and this court in the first appeal) focuses on the language of the first-quoted paragraph of the automatic insurance provision namely "acquisition of ownership." I am quick to add however that under the facts of the instant case my observation is a distinction without a difference as I will indicate both "acquisition of ownership" and "delivery" occurred after August 3, 1977, and before February 3, 1978. Therefore the December 19, 1977, notice of *delivery* was timely under the second paragraph of the automatic insurance provision.

Contrary to the view of the majority I would rely on the authority of this court's decision in *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280, 157 N.E.2d 679, which is not factually distinguishable in its significant parts. I conclude that rather than favoring third-party defendant insurer, the case compels an affirmance of the instant case.

This court held in *Mullen* that the crucial determination is whether or not there has been a "delivery" within the meaning of the policy and that delivery is an essential prerequisite to coverage. The

court observed that there need not be a manual delivery of the article. The court concluded that the payment of the purchase price and the fee for transfer of the license and certificate of title was sufficient evidence of delivery to implement the automatic insurance provision. *Mullen v. Farm Bureau* (1959), 21 Ill. App. 2d 280, 285-89, 157 N.E.2d 679, 682-84. See generally 7 Am. Jur. 2d *Automobile Insurance* sec. 233 (1980).

Since in the instant case the receipt of title evidencing acquisition of ownership and payment of the purchase price occurred after August 3, 1977, "*delivery*," as defined in *Mullen,* occurred after August 3, 1977. Under these facts plaintiff had until February 3, 1978, to give notice to the insurer of the delivery of the vehicle. Notice given December 19, 1977, two days after the accident, was timely and the insurer is liable under the terms of its policy.