42644, 42645. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. BURDEN et al.; and vice versa.

ARGUED MARCH 6, 1967—DECIDED APRIL 5, 1967—
REHEARING DENIED APRIL 21, 1967—

*Beck, Goddard, Owen & Smalley, Robert H. Smalley, Jr., Stephen O. Squires,* for appellant.

*Adams, Barfield & Miller, Dickson Adams, Ronald Barfield, Harry A. Crawley, Owen J. Adams,* for appellees.

HALL, Judge. 1. It is true, before the issue of co-operation could arise, Watts would have to be an insured under the terms of the policy. If this issue were determined favorably to Watts (or the plaintiff), then whether he had complied with the conditions imposed by the policy would become an issue in determining whether he was entitled to its benefits. If there was an issue that Watts was not an insured under the terms of the policy, it was not inconsistent for the insurer to claim that, even if Watts prevailed on this issue, he still was not entitled to the benefits of the policy because he had not complied with its conditions. *Cotton States Mut. Ins. Co. v. Martin,* 110 Ga. App. 309, 311 (138 SE2d 433); *Sims T.V., Inc. v. Fireman's Fund Ins. Co.,* 108 Ga. App. 41 (131 SE2d 790). Furthermore, "A defendant is entitled to file as many separate defenses as he desires, regardless of whether such defenses are inconsistent or contradictory." *Brooks v. West Lumber Co.,* 88 Ga. App. 510, 512 (77 SE2d 43). See also *Milam v. Terrell,* 214 Ga. 199 (104 SE2d 219).

The evidence did not demand an answer of yes to question No. (1) submitted to the jury. Therefore, the trial court did not err in its rulings based on its determination that Watts' co-operation was an issue in the case.

2. The judgment upon which garnishment was sought arose out of an accident early one morning after an all-night poker game and involved an automobile owned by one of the participants in the game (Morgan) and which was driven from the game by another (Watts). The liability insurer immediately after the accident on September 26, 1961, began its investigation and obtained statements from the owner and others attending the game.

Morgan, the owner, and a player named Amos, stated that Morgan consented for Watts to drive his car from the game in the company of Amos. Morgan stated he intended to allow only Amos to have custody and control of the car on that trip, and that Watts returned to the game alone and gave him the keys, and he had them in his pocket at the time he and others at the game learned of Watts' collision, and after Watts returned the keys he gave no one permission to use the car. Others stated

that they were close to Morgan throughout the evening and did not hear him give anyone permission to drive his car.

At the trial Morgan testified that the day of the accident when he came to the insurance agent's office to make a report he was going to try to help everybody concerned (including Watts) to take care of the hospital bills and he started to tell "a little tale about the whole thing," but when they started to write everything down he told them "I guess I had better tell you the truth." He testified that when he first went to the insurance company office he started telling the agent that Watts had permission "but never had got into it in detail." He testified at the trial that he gave Watts the keys when he and Amos left and said it would be all right for him to drive as long as Amos went along, that when Watts came back he laid the keys on the table and he picked the keys up and *thereafter* never gave Watts the keys or permission to use the car.

Watts testified that he remembered agents of State Farm Insurance Company coming to visit him one time when he was in the hospital following the accident and vaguely at an earlier time when he was under heavy sedation. The second time they came he "had already been told by some people, visitors out there, that Theo Morgan was saying that he did not lend me his automobile," so he told the insurance adjusters he would rather wait and see his lawyer first, before he gave any statement; and the agents never contacted him again, and he had never been asked to nor offered or endeavored to give them any statement or assistance concerning the accident; and he employed an attorney shortly after he got out of the hospital (40 days) and told him how the accident happened.

The insurance agent and adjuster testified that each time they visited Watts in the hospital they told him who they were and that they were investigating the accident and asked him to give his co-operation in investigating the circumstances of the accident and *a statement as to how he came into possession of Mr. Morgan's car*, and he refused; that they asked him to sign a non-waiver of rights and he refused; and that on one occasion between their visits to the hospital they went to Watts' home and talked to his father.

There is no showing of communication between the insurer

and Watts from the time of these events in 1959 until June 22, 1961, when Watts' attorney wrote the insurer's agent a letter enclosing a copy of Burden's suit filed June 17, 1961, against Watts, and stating, "Since your company is the insurance carrier on the automobile described in said petition, Mr. Watts has asked that I forward this defendant's copy of the petition to you as notice of said suit, and of his notice to you and your company of your liability to defend said action." In response to this letter the insurer wrote Mr. Watts, sending a copy to his attorney, that the policy issued to Morgan ". . . does not provide you coverage for the accident of September 26, 1959, as you do not qualify as an insured under the policy. This is because you were operating the automobile without the permission of the named insured. . . In addition to the above, the policy does not afford you any protection since you failed to give full and complete co-operation to State Farm Mutual Automobile Insurance Company. Our Field Claim Representative on several ocassions while investigating this accident immediately after the accident occurred, contacted you and attempted to secure information from you. You flatly refused to give this Field Claim Representative any co-operation regarding the facts and circumstances of the accident or the conditions under which you were driving the vehicle belonging to W. T. Morgan. . . For the above stated reasons . . . [the policy] will not afford you coverage of any kind or legal defense for claims arising out of the accident of September 26, 1959."

Watts' testimony, related supra, shows that even after receipt of this letter, he did not advise the company that he was driving with Morgan's permission or offer to comply with the policy provisions requiring co-operation of an additional insured.

An additional insured owes the duty to co-operate with the insurance company to the same extent and in the same degree as would the named insured had he alone been involved in a collision. *Cotton States Mut. Ins. Co. v. Martin*, 110 Ga. App. 309 (138 SE2d 433); *Ericson v. Hill*, 109 Ga. App. 759 (137 SE2d 374); 8 Appleman, Insurance 116, § 4775; Anno. 72 ALR 1375, 1429.

We will assume for the purposes of this decision that Watts is found to have driven with Morgan's permission and had the

rights of defense and coverage as an additional insured under the policy, but did not make an election to be covered until he was served with the plaintiff Burden's action for damages. See *Ericson v. Hill*, 109 Ga. App. 759, supra. And we agree that declining to give a statement to representatives of an insurer before consulting an attorney is not in itself a refusal to co-operate. Holubetz v. National Fire Ins. Co., 215 NYS2d 986, 989. See 8 Appleman, Insurance 119, § 4776.

The letter written by Watts' attorney to the insurer did not affirmatively state that Watts was driving the insured's car with permission or that his claimed right to be furnished a defense was based on driving with permission. This letter was not sufficient compliance with the insurer's earlier request for his co-operation in investigating the accident and how he came into possession of the car, or to make the insurer responsible for Watts' defense and liability.

The facts alleged in the petition against Watts, forwarded with the letter to the insurer, did not on its face show that Watts was covered by Morgan's policy. See *Loftin v. U. S. Fire Ins. Co.*, 106 Ga. App. 287, 290 (127 SE2d 53). When Watts received the reply to this letter from the insurer, advising him as stated supra, his silence and failure thereafter to do anything to comply with the co-operation provisions of the contract under which he sought defense was a refusal to co-operate which relieved the insurer of any obligation whatever under the policy. By attempting to invoke the coverage of Morgan's policy, Watts was bound by its terms and owed a duty to comply with the insurer's previous request to supply it with any information as to how he came into possession of Morgan's car. An additional insured can "not elect to come under the coverage portion of the agreement and reject other portions." *Cotton States Mut. Ins. Co. v. Martin*, 110 Ga. App. 309, 311, supra; *Ericson v. Hill*, 109 Ga. App. 759, supra.

The trial court erred in overruling the defendant's motion for judgment notwithstanding the mistrial.

*Judgment reversed on appeal. Judgment affirmed on cross appeal. Felton, C. J., and Eberhardt, J., concur.*