NORMA PERRY et al., Plaintiffs-Appellants, v. MARGARET SALEDA, Defendant-Appellee.—(ALLSTATE INSURANCE COMPANY, Garnishee-Appellee.)

(No. 74-25;

Third District—December 31, 1975.

Herbolsheimer, Lannon & Henson, P. C., of La Salle (R. J. Lannon, of counsel), for appellants.

Peter F. Ferracuti, of Ottawa, and Robert Russell, of Johnson, Martin & Russell, of Princeton, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is a garnishment proceeding by plaintiffs to collect on judgments recovered for personal injuries they sustained on October 15, 1967, when their automobile collided with a 1965 Volkswagen operated by the judgment debtor, Margaret Saleda, now Margaret Carr. The cause was tried by plaintiffs upon the theory that Mrs. Carr was a minor of 17 years at the time she purchased the Volkswagen from Edward Walters on October 14, 1967; that Walters had a policy of liability insurance covering that vehicle with garnishee-defendant, Allstate Insurance Company (hereinafter "Allstate") which was in effect for the period commencing March 1967 and expiring March 1968; that Mrs. Carr, after attaining her majority on November 4, 1967, effectively rescinded that sales transaction on August 6, 1968; that by such rescission, the sales transaction was voided ab initio so as to make Mrs. Carr an additional insured as a permissive user of Walters' Allstate-insured vehicle on the date of the accident; and finally, that Allstate is accordingly liable for the satisfaction of their judgments. Plaintiffs also claimed that there was an oral agreement made on October 14, 1967, between Mrs. Carr and Allstate's agent, Al Robinson, whereby Allstate undertook to provide her with public liability coverage. Allstate defended on the theory that there was no oral agreement for insurance, that Mrs. Carr's purported rescission was not made within a reasonable time to be effective, and that even if the rescission was effective, the policy conditions of coverage in Walters' policy were breached in any event by Mrs. Carr's failure to give Allstate written notice of the particulars of the accident as soon as practicable, and to immediately forward the summons and complaint, or for failure of cooperation. Judgment was entered on a general verdict

finding the issues in favor of Allstate. Plaintiffs appeal the judgment in favor of garnishee-appellee and both plaintiffs and Allstate appeal from orders denying their respective post-trial motions.

The testimony at the trial was largely undisputed and needs to be presented for an understanding of the issues.

Under date of March 17, 1967, renewal certificates of insurance were issued by Allstate to Edward Walters extending public liability coverage under its policy no. 02016471 for a period expiring March 17, 1968, for two "owned automobiles" described in the certificates. One of these was the 1965 Volkswagen upon which there existed a lien in favor of The Sheridan State Bank which held the certificate of title. This policy, in describing the coverage extended to "owned automobiles" of the named insured stated that the phrase means any automobile described in the certificates and any automobile of which the named insured shall acquire ownership in "replacement" of one described in the certificates. The conditions also provide at paragraph 1 that coverage applies in respect to an automobile described in the certificates only while it is owned by the named insured. Persons insured, in addition to the named insured, included, under the omnibus clause, others persons while using an "owned automobile" with permission of the named insured. It was also stated in the policy to be a condition of coverage that:

"In the event of accident, occurrence or loss, written notice containing all particulars shall be given by or for the insured to Allstate as soon as practicable  *  *  *. If claim is made or suit is brought against the insured, he shall immediately forward to Allstate every demand, notice or summons received by him or his representative.  *  *  *  [T]he insured shall cooperate with Allstate disclosing all pertinent facts known or available to him, and upon Allstate's request shall attend hearings and trials, and shall assist in effecting settlements  *  *  *  and in the conduct of suits."

In late September, 1967, Walters decided to replace his '65 Volkswagen by the purchase of a new one. Margaret Carr testified that she learned of Walters' interest in selling the vehicle from his daughter, Rita, who was a coworker of hers. She stated that she later telephoned Walters about buying his '65 model and that they agreed upon a price of $850 of which $40 was paid in cash. Mrs. Carr was to arrange her own financing for the balance.

Margaret Carr was an unmarried minor of 17 years at the time, approaching her majority on November 4. She was employed at Sears in Ottawa where Allstate maintained a booth for the sale of insurance by its agent, Al Robinson, who was also employed there by Allstate Enter-

prises, Inc., a finance company. Her mother and stepfather, Ellen and Carl Dimmick, applied to Robinson for a purchase money loan for Margaret which he approved, on the parents' signatures only to a note and a chattel mortgage. According to Robinson, he explained to the borrowers in the presence of Margaret that he could not "write insurance" for Margaret because of her minority and because her parents were not Allstate insureds, and that she should apply to her parents' carrier for coverage. Margaret testified that she expected title to be registered in the Dimmicks although she also testified to an understanding that she would make the payments.

On October 13 or 14, 1967, Walters received a check made by Allstate Enterprises, Inc., for the balance of $810 showing Carl Dimmick, as buyer. On October 14, he drove to The Sheridan State Bank, cashed the check, discharged the lien on the Volkswagen, received the title certificate, executed an assignment of title on the reverse side to Margaret Saleda before a notary under date of October 14, and as Margaret had directed, parked the auto in a lot near Sears, removed the license plates, and according to his testimony, delivered the keys and title papers to Al Robinson at the Allstate booth. On the same day, he went to Joliet and purchased a 1968 Volkswagen as a replacement auto and affixed the license plates he had removed from the older model. He reported this purchase to Allstate about one week later, and under date of October 20, 1967, Al Robinson for Allstate executed a form acknowledging Walters' replacement of autos, and an endorsement for his policy was then issued showing the change effective from October 21, 1967.

Margaret Carr testified that she received the keys to the 1965 Volkswagen on October 14, from Robinson, but not the assignment of title. This was apparently left with Robinson and was completed by Allstate Enterprises, Inc., to show notation of its lien. An application for change of title was later executed by her mother and stepfather under date of November 20, 1967, after Margaret had obtained her majority but while she was hospitalized, and was delivered by them to Robinson who mailed it. Margaret mailed her own application for license plates, however, on October 14 when she took her car from the lot. On October 15, while driving the auto with a friend as a passenger, she became involved in the collision with plaintiffs. Her friend was killed in this collision and Margaret herself sustained serious injuries requiring hospitalization until December 6, 1967. Plaintiff's complaint for damages was filed on November 28, 1967, and summons was served upon Mrs. Carr in early December while she was in the hospital.

After her release from the hospital, Mrs. Carr retained an attorney in January 1968 to defend her against plaintiffs' claims, and discussed

with him the facts of the case and the answer he prepared on her behalf. Her attorney testified that under date of August 6, 1968, he mailed a letter to Walters, which the latter acknowledged receiving, stating:

"Margaret Saleda of Ottawa * * * purchased a Volkswagen from you on October 14, 1967. At the time of transfer, however, she was a minor and was incapable of entering a contract for the purchase of an automobile. It is now her decision to recind the purchase * * *."

No other demand was made of Walters. The price was never refunded nor possession of the auto tendered, and there is no evidence that title papers were ever reassigned or tendered.

Robert Dertina, a claims representative for Allstate, testified that Allstate received its first notice of the loss from a telephone call on November 11, 1968, and that Walters had been made a party to a lawsuit. There is no indication in the excerpts as to what information he received in this communication, or from whom it came. Although Robinson, as an Allstate agent, was aware of Margaret Carr's minority on October 14, knew of the accident on October 15, and was undoubtedly aware of her disability on November 20 when he received the application for title signed by the Dimmicks, Dertina testified that Allstate received its first notice that coverage was being requested for Mrs. Carr in May 1969. Although the jury might have inferred that Allstate, in connection with its defense of Walters in November 1968, received notice then through him of Margaret Carr's August 6 letter of recission, there was no direct evidence to that effect.

There was considerable testimony in respect to Mrs. Carr's physical and emotional condition after her discharge from the hospital on December 6. She had a steel rod in her left arm and leg, wore a cast on the arm for about a year and got around with a walker until about the time she went back to work at Sears. She described her emotional state as unstable, and her father, John Saleda, indicated that she was depressed at times. She became engaged to marry in March 1968, returned to work at Sears in April, and was married on July 6, 1968. After she went back to work at Sears, she did not discuss the claim with an Allstate adjuster, and did not discuss insurance with Robinson.

■■ Although Margaret Carr would have to have been an additional insured under Walters' policy before the issue of her breach of his policy conditions could arise, it was not inconsistent for Allstate to claim her recission was untimely and ineffective so that she was not within the policy, but that even if she should prevail on that issue, she was still not entitled to coverage because of her failure to comply with policy conditions. (*State Farm Mutual Automobile Insurance Co. v. Burden*, 115

Ga.App. 611, 155 S.E.2d 426 (1967).) Where, as here, several issues are contested and submitted to a jury, a general verdict creates a presumption that all material issues of fact upon which proof was offered were found in favor of the prevailing party. (*Waters v. Chicago & E.I.R.R. Co.*, 86 Ill.App.2d 48, 229 N.E.2d 151 (5th Dist. 1967).) Accordingly, the general verdict here is taken to mean that the jury found in favor of Allstate that there was no oral agreement to insure Mrs. Carr, that her effort at rescission was untimely and ineffective, and decided also that even if a contrary result on the rescission issue were justified, the affirmative defenses were proved and would preclude her coverage.

The issue raised by plaintiffs' post-trial motion which we will first consider on appeal is that the foregoing verdict is contrary to the manifest weight of the evidence and to the law. Since no argument had been made here, however, in respect to the findings that there was no oral insuring agreement, we shall in considering these grounds on appeal confine our concern to the matter of whether the findings as to rescission and on the affirmative defenses is supported by the record and the law.

■■ In an annotation at 5 A.L.R.2d 7, 11, § 3 (1949), the author comments that in some jurisdictions the cases recognize a distinction between executed and executory contracts of minors in respect to what kind of conduct after they attain majority will constitute a ratification. (See also 42 Am.Jur.2d *Infants* § 61 (1969).) Where the distinction is accepted, it is said that the executory contracts of minors are not binding until they are ratified or confirmed by some positive act after reaching their majority which demonstrates an intention to be bound by them. Executed contracts, however, are deemed binding until disaffirmed within a reasonable time after reaching majority, so that mere long continued silence and apparent acquiescence will be deemed a ratification. (42 Am.Jur.2d *Infants* § 135 (1969).) In *Dixon National Bank v. Neal*, 5 Ill.2d 328, 125 N.E.2d 463 (1955), it was held that the fully executed contract of a minor, voidable upon the grounds of infancy, became ratified by the failure of the former infant to disaffirm it within a reasonable time after she attained majority. In *Shepherd v. Shepherd*, 408 Ill. 364, 97 N.E.2d 273 (1951), the court held that the question of what is a reasonable time after reaching majority for the effective disaffirmance of a contract made during minority is a question of fact dependent upon the circumstances of each particular case because it requires that such consideration be given to the rights of others as is fairly consistent with the adequate protection of the rights of the former minor.

■■ Applying this law to the facts here, it is apparent that the transaction between Margaret Carr and Edward Walters was a fully executed contract on October 14, 1967; no promises between the parties remained

to be performed. The loss occurred the following day. She attained her majority on November 4, 1967, and plaintiffs' complaint for damages was filed on the following November 28. She was discharged from hospitalization on December 6, 1967, retained her personal attorney in January 1968 to defend her, and although there was a period of some lingering disability, she became engaged to marry in March, returned to work at Sears in April and became married in July 1968. She gave no one any indication of her intention to rescind until August 6, 1968, and then only to Edward Walters. In determining whether a delay of ten months following majority constituted a ratification under these circumstances, the jury was entitled to give consideration to the question of how the rights of others were being affected during this period of silence. Commencing November 4, prior to the time suit was filed on November 28, she was chargeable with the responsibilities of an adult. The question of what was a reasonable time for her to give notice of her intention to rescind, therefore, must be considered in the context of her status as an adult defendant in a lawsuit, because an election to rescind, so as to shift to the vendor's insurer a responsibility to investigate, to defend and to indemnify if she would be held a permissive user, would also establish in her, adult legal duties of notice and cooperation as an asserted additional insured. The cooperation clauses in liability policies are binding on persons claiming to be additional insureds. (*Muthart ex rel. Zitnik v. Burik*, 327 Ill.App. 170, 63 N.E.2d 635 (1st Dist. 1945), *aff'd*, 395 Ill. 182, 69 N.E.2d 888 (1946); 8 Appleman, Insurance Law and Practice, § 4775 (1942).) The purpose of such clauses is to give the insurer an early opportunity to make a timely and adequate investigation of the facts, to locate witnesses and to prepare its defense. (*Walsh v. State Farm Mutual Automobile Insurance Co.*, 91 Ill.App.2d 156, 234 N.E.2d 394 (1st Dist. 1968).) We think the jury could reasonably conclude under the circumstances here that Mrs. Carr was required to have rescinded within the same period of time as would allow her to be in compliance with the obligations existing under the notice and cooperation clause of the policy upon which coverage is sought. Compliance with the notice and cooperation clause required notice of the pertinent facts of the loss as soon as practicable so as to permit an early investigation. One of the most pertinent facts here, of which notice was required, was Mrs. Carr's intention to rescind, for it is the effectiveness of that act which creates the insurer's responsibilities, if any, for the loss. If there was justifiable excuse for the delay, such as lack of knowledge about the existence or requirements of the policy, the burden of proof rested with plaintiffs. (*Muthart ex rel. Zitnik v. Burik.*) It was not established. Mrs. Carr retained personal counsel in January 1968, and participated in pre-

paring the answer to the complaint; there is no evidence of any impairment of her mental faculties. In *Charter Oak Fire Insurance Co. v. Snyder*, 22 Ill.App.3d 350, 317 N.E.2d 307 (2d Dist. 1974), it was held that a delay of 11 months from the date of the collision and of 4 months from learning of the existence of the policy in giving notice to an insurer, in the absence of proof excusing the delay, established noncompliance with policy requirements for notice as soon as practicable. We think the finding that Mrs. Carr's notice of rescission came too late is fully supported by the evidence and the law. Considering further that the jury could find that no notice of intent to rescind, or of claim for coverage, was given to Allstate until May 1969, as Robert Dertina testified, we also conclude that the findings in respect to the affirmative defenses is sustained by the record. We find it unnecessary to discuss the question of whether a timely rescission would have revested title in Walters as of October 15 so as to make Mrs. Carr a permissive user as a matter of law, or whether the rescission of the transaction would also void the conditions under which possession was given and thereby constitute her a nonpermissive user.

■■ In support of a prayer for judgment notwithstanding the verdict, plaintiffs' post-trial motion asserted that as a matter of law the uncontroverted proof shows that title to the 1965 Volkswagen was still in Walters on October 15, 1967, because it had not transferred under provisions of the Illinois Vehicle Law (Ill. Rev. Stat. 1967, ch. 95½, §§ 3—112 and 3—115) and was still (until October 21, 1967) a vehicle specifically described in the Declarations of Walters' Allstate policy as an "owned" or insured automobile, and shows also that Mrs. Carr was a permissive user and additional insured. We find no merit in this contention. Walters had complied with all the provisions of the statute when he delivered possession and the assignment of title. The fact that no application for transfer of title was mailed on Mrs. Carr's behalf until November 20, 1967, would not delay the effective transfer as between the parties. The statute recites at section 3—112(e) that the provisions thereof in respect to when a transfer shall become effective do not apply as between the parties to the transaction, and that an owner who has done all that is required of him by the act is not liable for damages thereafter resulting from operation of the vehicle. In *Country Mutual Insurance Co. v. Murray*, 97 Ill.App.2d 61, 239 N.E.2d 498 (2d Dist. 1968), it was held that registry of title is not conclusive on the issue of when transfer of ownership of an automobile occurs. The time of passing of title is a question of the intention of the parties. (*Mullen v. Farm Bureau*, 21 Ill.App.2d 280, 157 N.E.2d 679 (2d Dist. 1959).) As between the parties here the transaction was completed on October 14 and was to

be effective on that date. In the letter of rescission to Walters on August 6, 1968, Mrs. Carr's attorney refers to October 14, 1967, as the time of transfer, when "she was a minor." She was not a minor on November 20.

■■■ Moreover, after the effective date of transfer on October 14, the vehicle was no longer an "owned automobile" of the named insured within the meaning of Walters' Allstate policy even though it remained described in the Declarations (*i.e.*, the attached certificate or supplement page) until October 21, when the new endorsement or certificate was issued by Allstate. The policy conditions at paragraph 1 state that coverage applies in respect to automobiles described in the certificates only while they are owned by the named insured. A transfer of coverage from the 1965 Volkswagen to Walters' 1968 model purchased as a replacement occurred automatically on October 14, and was not delayed as plaintiffs contend, until the new certificate was issued by Allstate, effective October 21. The purpose of the "replacement auto" clause is to provide automatic coverage for any newly acquired replacement auto not yet specifically identified to the policy until such time as, by formal acknowledgment and endorsement, it becomes specifically described and identified therein as an "owned automobile" of the named insured. When that occurred here on October 21, the 1968 Volkswagen was no longer insured as a "replacement auto," but as the auto specifically designated in the certificate. *Cook v. Suburban Casualty Co.*, 54 Ill.App.2d 190, 203 N.E.2d 748 (5th Dist. 1964).

Plaintiffs' post-trial motion also asserted a right of a new trial on the grounds of newly discovered evidence tending to show that Allstate's agent, Robert Dertina, testified falsely in support of Allstate's affirmative defenses, that Allstate's first knowledge of the loss came on November 11, 1968, and that its first notice of Mrs. Carr's claim for coverage came in May 1969.

To justify a new trial on the basis of newly discovered evidence, it is required to be shown that that evidence is of such conclusive kind, and not merely cumulative, as would be likely to change the results of the case on a new trial, and it must be shown also that it was not discoverable before trial by the exercise of diligence. (*Runowicz v. Rock Island Bank & Trust Co.*, 90 Ill.App.2d 222, 232 N.E.2d 459 (3d Dist. 1967).) These requirements apply even where it is claimed that the newly discovered evidence shows that a material witness testified falsely. (*Kaster v. Wildermuth*, 108 Ill.App.2d 288, 247, N.E.2d 431 (3d Dist. 1969).) Since the newly discovered evidence here is addressed only to the issue of affirmative defenses, it would not change the results of this case unless the findings in favor of Allstate on the rescission issue are overcome. As final grounds for overcoming the presumption of the verdict on the issue

of rescission, plaintiffs attached to their motion the affidavit of one juror, Andrew Elias, Jr. The affiant recites therein that the jury decided in favor of Margaret Carr on the rescission issue and in favor of Allstate on the affirmative defense that she failed to cooperate and on her claim that she was insured with Allstate.

■■■■ The affidavit of the juror days after judgment may not be substituted for the procedures available under section 65 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, § 65) for interrogatories as an appropriate means of obtaining information as to special findings. Moreover, in *Schiff v. Oak Park Cleaners & Dyers, Inc.*, 9 Ill.App.2d 1, 132 N.E.2d 416 (1st Dist. 1955), it was held to be a well-settled rule that affidavits of jurors will not be received for the purpose of impeaching a verdict and will only be received to support it when the conduct of jurors in determining the verdict has been attacked. There has been no such attack here, and although plaintiffs assert that the affidavit is offered in support of the verdict, it is in fact offered in support of a motion to set it aside. Judge Hoffman correctly refused to consider the affidavit because it was irrelevant.

The newly discovered evidence in the case at bar consists of four letters from Mrs. Carr's attorney to Allstate, commencing March 25, 1968, and four letters of reply from Allstate, the last being dated May 6, 1968. The first letter from her attorney demands a defense for Mrs. Carr *under a policy issued to Ellen Dimmick;* the second, dated April 25, 1968, encloses a copy of the Perry complaint for damages; the third and fourth make a demand for defense *under a policy issued to Carl Dimmick.* The Allstate letters are all the same form letter asking for more information so that it can identify its policyholder. It is evident from the series of letters from Mrs. Carr's attorney identifying various policyholders that he was severely handicapped by Mrs. Carr's lack of understanding in respect to the financing and as to how title had been taken. The undisputed evidence in the record is that neither Ellen nor Carl Dimmick were insured by Allstate. None of the letters make mention of Edward Walters, or demand a defense or coverage under a policy issued to him. All of the letters long predate the first notice of Mrs. Carr's intention to rescind the sales transaction which her attorney mailed to Walters on August 6, 1968. The Perry complaint forwarded to Allstate alleges only that Margaret Saleda (Carr) was driving "her" 1965 Volkswagen and makes no mention of Walters *or of any facts that would give Allstate notice of a duty under Walters' policy.* Mrs. Carr's answer to that complaint admits the allegation, although it is unsigned. While Robinson was aware of Mrs. Carr's minority on October 14 and undoubtedly of the fact of the accident, no one, before August 6, 1968, had any notice that Mrs.

Carr was claiming a right to bring herself within the coverage of Walters' policy by rescinding the transaction. The letter of rescission, dated August 6, 1968, was mailed to Walters, not Allstate. The only direct evidence of any demand or notice after that date is the testimony of Mr. Dertina that it came to Allstate on May 9, 1969. The testimony is not contradicted by the newly discovered evidence nor is it shown that Dertina's testimony in respect to notice of the attempted rescission was false. While the new evidence indicates that summons and notice of the Perry claim against Mrs. Carr were in fact furnished to Allstate on April 25, 1968, and thereby supplies information the jury did not have, that new evidence would not be conclusive on the issue of Mrs. Carr's cooperation and notice where it supplied no information to Allstate whatever of the pertinent fact that Mrs. Carr intended to rescind her purchase from Walters, and that she claimed coverage under his policy.

██ Allstate's post-trial motion maintained that the circuit court erred in failing to direct a verdict in its favor both at the close of plaintiffs' evidence and at the close of all the evidence. Since we find no reason for disturbing the judgment of the circuit court on the general verdict for Allstate, it will be unnecessary to consider these contentions. See *Charter Oak Fire Insurance Co. v. Snyder.*

The judgment of the circuit court was correct and is affirmed.

STOUDER and STENGEL, JJ., concur.