2025 IL App (1st) 232422-U

THIRD DIVISION
September 30, 2025

No. 1-23-2422

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee and Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18 CH 2931 |
| | ) | |
| CHARTER OAK FIRE INSURANCE COMPANY, | ) | |
| incorrectly sued herein as TRAVELERS INSURANCE | ) | Honorable |
| COMPANY, and HAMILTON PARTNERS, INC. | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |
| Defendants-Appellants and Cross-Appellees. | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirming the judgment of the circuit court of Cook County in a coverage dispute between two insurers.

¶ 2   This appeal involves a dispute between two commercial insurers as to which insurer is responsible for the payments made on behalf of an insured—defendant Hamilton Partners, Inc. (Hamilton)—as part of the settlement of an underlying negligence lawsuit against Hamilton.

Defendant Charter Oak Fire Insurance Company (Charter Oak)[1] challenges the determination of the circuit court of Cook County that the Charter Oak policy provided primary coverage and the policy issued by plaintiff American National Property & Casualty Company (ANPAC) provided excess coverage to Hamilton. In its cross-appeal, ANPAC maintains that the circuit court erred in rejecting its contention that Hamilton's violation of a cooperation provision in its policy invalidated ANPAC's coverage obligations. As discussed below, we affirm.

¶ 3                                    BACKGROUND

¶ 4                              *The Underlying Incident*

¶ 5     Hamilton was the property manager of a commercial building on Woodcreek Drive in Downers Grove, Illinois (the building). The building was owned by Esplanade at Locust Point – 1 Limited Partnership (Esplanade). Hamilton hired Condenser People, Inc. (Condenser People) to service air conditioning condensers on the roof of the building. On June 26, 2015, Jason Topnick (Topnick), an employee of Condenser People, sustained serious injuries while working when he fell through a skylight on the roof of the building.

¶ 6     On February 5, 2016, Topnick filed a complaint against Hamilton and another defendant in the circuit court of Cook County (case no. 16 L 1270). The complaint alleged, in part, that Hamilton's negligence proximately caused Topnick's injuries. In a first amended complaint filed on April 25, 2016, Esplanade was added as a defendant. Additional defendants were added as Topnick's complaint was amended a total of six times between 2016 and 2019.

¶ 7                                  *ANPAC Policies*

¶ 8     ANPAC issued a commercial insurance policy to Condenser People which was in effect

---

[1] The complaint and other documents incorrectly referenced "Travelers Insurance Company" rather than Charter Oak. Charter Oak is 100% owned by The Travelers Indemnity Company. For clarity purposes, we refer to Charter Oak instead of Travelers throughout this order.

on the date of Topnick's accident. The limit of liability under the policy was $2 million per occurrence. Prior to Condenser People's commencement of work at the building, Hamilton was added as an additional insured on the ANPAC policy, at Hamilton's request.

¶ 9 The ANPAC policy included an endorsement entitled "Primary and Noncontributory Insurance." The endorsement stated, in part: "Where required by written contract or agreement, this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and/or noncontributing, whichever applies, with this insurance." The parties agree that no such "written contract or agreement" exists. The endorsement further provided, in part, that "[a]ny insurance provided by this endorsement shall be primary to other insurance available to the additional insured except *** [a]s otherwise provided in the COMMON POLICY CONDITIONS, H. OTHER INSURANCE." The "other insurance" provision, as modified by an Illinois-specific endorsement, stated, in part:

"H. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not."

In addition to the policy described above, ANPAC also issued an umbrella insurance policy and a workers' compensation and employers' liability insurance policy to Condenser People.

¶ 10                                    *Charter Oak Policy*

¶ 11    Charter Oak issued a commercial insurance policy to Hamilton and Esplanade which was in effect on the date of Topnick's injury. The limit of liability on the Charter Oak policy was $1 million per occurrence. The "Other Insurance" provision of the policy stated, in part:

"4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover ***, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

* * *

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."

An endorsement to the Charter Oak policy entitled "Real Estate Property Managed" provided, in part: "With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you."

¶ 12                    *Initial Correspondence and Related Matters*

¶ 13    On October 28, 2015, a representative of Charter Oak sent a letter notifying ANPAC of Topnick's accident and informing ANPAC that Topnick had retained counsel to pursue a claim for his injuries. The letter requested that ANPAC defend and indemnify Hamilton and Esplanade. According to Charter Oak, ANPAC did not respond.

¶ 14    In a letter to ANPAC and Condenser People dated March 9, 2017, Hamilton and Esplanade demanded the acceptance of their tender of defense within 30 days. ANPAC responded on May 30, 2017, that it would accept the tender on an excess basis only and would not provide a defense or indemnification to Hamilton until its primary insurance was exhausted.

¶ 15    In telephone calls and letters in the ensuing months, ANPAC's counsel requested certain information from Hamilton, including copies of its insurance policies. Counsel maintained that the ANPAC policy imposed a duty of cooperation. In a letter dated December 6, 2017, ANPAC's counsel indicated that if the information was not provided by December 19, 2017, Hamilton would be deemed to be in breach, and ANPAC would consider withdrawing coverage.

¶ 16                    *Tender to ANPAC and Deselection of Charter Oak*

¶ 17    Hamilton's counsel sent a letter to ANPAC's counsel dated December 19, 2017. The letter advised that Hamilton was making a targeted tender to ANPAC for its defense and indemnity in Topnick's lawsuit, pursuant to *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570 (2000). The letter further advised that Hamilton had deselected the Charter Oak policy and was not seeking contribution for its defense and indemnity from Charter Oak. As discussed further below, the targeted tender doctrine permits an insured with coverage under multiple liability policies to select which insurer provides a defense and indemnity for the claim, thus deselecting the other available insurers from the claim.

¶ 18                    *Initiation of Declaratory Judgment Action*

¶ 19     On March 6, 2018, ANPAC filed a complaint for declaratory judgment in the circuit

court of Cook County against Hamilton, Esplanade, Charter Oak, Topnick, and other defendants

(*e.g.*, companies which installed the skylight in the building).  Among other things, the complaint

sought an order declaring that the ANPAC policy was excess over the Charter Oak policy and

that the ANPAC policy provided no coverage as Hamilton failed to cooperate with ANPAC.

The exhibits to the ANPAC complaint included a third-party complaint for contribution filed in

March 2017 by Hamilton and Esplanade against Condenser People in the *Topnick* litigation,

which alleged, in part, that Condenser People failed to properly train and supervise Topnick.

¶ 20     Hamilton, Esplanade, and Charter Oak filed an answer to the complaint for declaratory

judgment, wherein they denied that the ANPAC policy was an excess policy and stated

affirmatively that the Charter Oak policy was excess to the ANPAC policy.  Hamilton also

represented that its reason for deselection of the Charter Oak policy was to minimize Hamilton's

"loss experience which may reduce [its] premium in the future."  Hamilton and Charter Oak

denied owing a duty to provide the Charter Oak policy to ANPAC but represented they would

provide a copy of the policy to ANPAC "with confidential information redacted or removed."

¶ 21     On September 13, 2018, Hamilton, Esplanade, and Charter Oak filed a motion to dismiss

certain counts of ANPAC's complaint pursuant to section 2-615 of the Code of Civil Procedure

(Code) (735 ILCS 5/2-615 (West 2018)).  The circuit court granted the motion, and ANPAC was

granted leave to file an amended complaint.

¶ 22                          *Amended Complaint*

¶ 23     On January 28, 2019, ANPAC filed an amended complaint for declaratory judgment

against Hamilton, Esplanade, Charter Oak, and other defendants.  The amended complaint

included counts alleging that the ANPAC policy was excess over Hamilton's insurance with Charter Oak (count I), that the ANPAC policy provided no coverage since Hamilton failed to cooperate with ANPAC (count VI), and that Hamilton's deselection of the Charter Oak policy was invalid (count VII). The amended complaint alleged, in the alternative, that the deselection of the Charter Oak policy rendered the ANPAC umbrella policy inapplicable (count VIII).

¶ 24    Hamilton, Esplanade, and Charter Oak filed an answer to ANPAC's amended complaint. Among other things, the answer admitted that ANPAC had requested a copy of the Charter Oak policy but was "not yet *** provided with one." Hamilton, Esplanade and Charter Oak also filed a motion to dismiss certain counts of the amended complaint. In an agreed order, ANPAC voluntarily dismissed multiple counts (counts II, III, IV, V, and IX) of the amended complaint.

¶ 25                              *Settlement of Topnick Lawsuit*

¶ 26    A mediation was scheduled in the *Topnick* litigation on August 14, 2019. Approximately one week prior to the mediation, counsel to Hamilton, Esplanade, and Charter Oak sent a letter to ANPAC's counsel confirming that Hamilton was targeting the ANPAC policy with exclusive defense and indemnity in the *Topnick* case, subject only to ANPAC's policy limits. Hamilton also informed ANPAC that it was making a "targeted tender" with respect to the ANPAC umbrella policy.

¶ 27    At the mediation, ANPAC maintained that Hamilton was entitled only to excess insurance from ANPAC and that Esplanade was not entitled to any coverage. Although the case did not settle at mediation, the parties executed a "Settlement Agreement Subject to a Mutual Reservation of Rights" on August 23, 2019. Charter Oak and ANPAC agreed to make payments to Topnick as compensation for the injuries he sustained from the skylight accident. Charter Oak

agreed to pay $975,000 on behalf of Hamilton and $25,000 on behalf of Esplanade. ANPAC agreed to pay $350,000 on behalf of Hamilton. To settle the contribution claims brought by Hamilton and Esplanade against Condenser People, ANPAC agreed to waive its entire workers' compensation lien for payments it made to Topnick on behalf of Condenser People from the date of the accident to the date of the execution of the settlement agreement, *i.e.*, approximately $600,000 in payments. ANPAC, on behalf of Condenser People, paid an additional $400,000 to Topnick to settle his workers' compensation claim and future liabilities and obligations of Condenser People and/or ANPAC under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2018)). The settlement agreement provided that "all insurance coverage-related disputes remain in full force and effect between Charter Oak, Esplanade and Hamilton Partners, on the one hand, and ANPAC, on the other hand."

¶ 28                                                    *Counterclaim*

¶ 29    On December 12, 2019, Hamilton, Esplanade, and Charter Oak filed a counterclaim against ANPAC which alleged, in part, as follows. In count I, Hamilton and Charter Oak alleged that, as Hamilton's subrogee, Charter Oak was entitled to recover the defense and indemnity expenses which it paid on behalf of Hamilton as a result of ANPAC's "breach of its policy." In count II, Charter Oak alleged in the alternative that it was entitled to equitable subrogation against ANPAC; Hamilton asserted an alternative claim for equitable contribution in count III.

¶ 30    In count IV of the counterclaim, which was also pled in the alternative, Charter Oak sought reallocation of the indemnity payments made to Topnick based on ANPAC's "improper manipulation" of the contribution action against Condenser People. Citing *Briseno v. Chicago Union Station Co.*, 197 Ill. App. 3d 902 (1990), Charter Oak alleged that ANPAC was "prohibited from benefitting" from Hamilton's contribution action against Condenser People.

According to Charter Oak, ANPAC "wrongfully manipulated the pleadings and the settlement process for its own benefit by refusing to contribute in good faith to [the] settlement unless Charter Oak agreed to pay its policy limit on a primary basis."  ANPAC filed an answer to the counterclaim.

¶ 31                              *Charter Oak's Motion for Summary Judgment*

¶ 32     Charter Oak filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2020)).  Charter Oak sought summary judgment on three counts of its counterclaims: count I (contractual subrogation against ANPAC); count II (equitable subrogation against ANPAC); and count IV (declaratory judgment regarding ANPAC's "manipulation" of the settlement proceedings).  Charter Oak also sought summary judgment with respect to three counts of ANPAC's amended complaint: count I (alleging the ANPAC policy was in excess of the Charter Oak policy); count VI (alleging Hamilton breached ANPAC's cooperation provision); and count VII (alleging that Hamilton's "targeted tender" was invalid).

¶ 33     In its supporting memorandum, Charter Oak argued, in part, that the "other insurance" conditions in its policy, as well as Hamilton's targeted tender, rendered the ANPAC policy primary as a matter of law.  Charter Oak posited that even if the ANPAC policy was an excess policy, "it makes no difference because Charter Oak's policy is excess as well."

¶ 34     Charter Oak also argued that ANPAC was liable for the amounts paid by Charter Oak to Topnick based on contractual subrogation pursuant to the Charter Oak policy, as well as equitable subrogation.  Charter Oak contended that ANPAC "wrongfully took" the benefit of Hamilton's contribution action against Condenser People and was thus required to reimburse Charter Oak for its entire payment to Topnick.

¶ 35     Finally, Charter Oak argued that ANPAC's cooperation defense was "baseless."  While

the amended complaint alleged that the ANPAC policy required cooperation if Hamilton was an "indemnitee," ANPAC admitted that Hamilton was an "additional insured." According to Charter Oak, the cooperation conditions imposed on indemnitees were thus inapplicable and imposed no duty on Hamilton.

¶ 36    The exhibits to the memorandum in support of the summary judgment motion included an affidavit of Rick Staback (Staback), a senior asset manager at Hamilton. Staback averred that it was the regular business practice of Hamilton in 2015 to require its contractors and service providers to name Hamilton and the building owner as additional insureds on their liability policies. Staback further averred that he authorized Hamilton's counsel to (a) make a "selective tender" of Hamilton's defense and indemnity to Condenser People's insurer (*i.e.*, ANPAC) in December 2017 and (b) reiterate the selective tender in August 2019, prior to the mediation.

¶ 37                    *ANPAC's Cross-Motion for Partial Summary Judgment*

¶ 38    ANPAC filed a cross-motion for partial summary judgment as to count I, VI, and VII of its amended complaint. ANPAC initially contended that Hamilton's "admitted non-cooperation" invalidated any coverage obligations of ANPAC. ANPAC observed that while Charter Oak argued its status as primary insurance based on the "other insurance" provisions of its own policy, ANPAC was not provided with a copy of the Charter Oak policy until shortly before the 2019 mediation, and such version had redactions. ANPAC also argued that Hamilton could have contracted with Condenser People for primary coverage but did not do so.

¶ 39    ANPAC further asserted that Hamilton's deselection of its Charter Oak policy did not cause the ANPAC policy to "drop down" and become primary, where the ANPAC policy language provided otherwise. As the $975,000 paid by Charter Oak to Topnick on behalf of Hamilton was less than the $1 million limit on the Charter Oak policy, ANPAC maintained that

it had no indemnity obligation to Hamilton for the settlement payment.

¶ 40                                                    *Rulings*

¶ 41    The circuit court entered an order on May 24, 2023, addressing Charter Oak's challenge to ANPAC's claim regarding Hamilton's non-cooperation. The circuit court found that ANPAC demonstrated that it exercised a "reasonable degree of diligence" in seeking Hamilton's participation and, "to a certain extent," Hamilton refused to cooperate. The circuit court further found, however, that ANPAC was not substantially prejudiced in the underlying litigation (the *Topnick* suit) and thus ANPAC was not entitled to a judgment on this claim (count VI).

¶ 42    In another order entered on May 24, 2023, the circuit court directed Charter Oak to electronically produce an unredacted copy of its policy for *in camera* review.

¶ 43    On October 23, 2023, the circuit court entered an order addressing the remaining issues in the cross-motions for summary judgment. The circuit court found that the ANPAC policy was not primary, as the existence of a written contract or agreement was a condition precedent to Hamilton "receiving full primary insurance coverage" from ANPAC. The circuit court also determined that the "Real Estate Property Managed" endorsement in the Charter Oak policy was not triggered by the existence of the ANPAC policy, as the ANPAC policy cannot be primary. As to the purported targeted tender, the circuit court concluded that Hamilton could not legally invoke coverage under the ANPAC policy until the Charter Oak policy was exhausted. Finally, the circuit court rejected Charter Oak's contention that ANPAC improperly recovered the benefit of Hamilton's contribution action against Condenser People.

¶ 44    The circuit court ultimately awarded summary judgment in favor of ANPAC on (a) count I of its amended complaint, which alleged that the ANPAC policy was excess over the Charter Oak policy and (b) count VII of its amended complaint, which alleged that Hamilton's

deselection of the Charter Oak policy was invalid. The circuit court denied Charter Oak's motion for summary judgment on count I (contractual subrogation), count II (equitable subrogation), and count IV (alleging "manipulation" of the settlement proceedings) of its counterclaim.

¶ 45 In an order entered on November 27, 2023, the remaining counts of ANPAC's complaint and the counterclaim against ANPAC were resolved through dismissal or withdrawal. Hamilton and Charter Oak filed a timely notice of appeal, and ANPAC filed a timely cross-appeal.

¶ 46                                     ANALYSIS

¶ 47 Hamilton and Charter Oak advance multiple arguments on appeal. They initially contend that the circuit court erred in granting summary judgment in favor of ANPAC where (a) the "other insurance" conditions of ANPAC's policy were inapplicable, (b) Charter Oak's "other insurance" conditions made its coverage excess, and (c) Hamilton target tendered its defense and indemnity to ANPAC. Hamilton and Charter Oak further maintain that the circuit court erred in denying Charter Oak's motion for summary judgment as to its counterclaims for contractual and equitable subrogation and for reimbursement of its indemnity payment. ANPAC challenges these contentions and asserts in its cross-appeal that Hamilton's noncooperation invalidated its coverage obligations.

¶ 48 Prior to addressing the parties' contentions, we briefly summarize certain principles which govern our analysis.

¶ 49                                 *Summary Judgment*

¶ 50 Summary judgment is properly granted where the depositions, pleadings, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West

12

2022). In determining the existence of a genuine issue of material fact, a court must construe the submissions strictly against the movant and liberally in favor of the nonmovant. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Although summary judgment is a drastic means of disposing of litigation, it is appropriate in cases where there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. *Crum & Forster Managers Corp. v. Resolution Trust Co.*, 156 Ill. 2d 384, 390-91 (1993).

¶ 51    When parties file cross-motions for summary judgment, they agree that solely a question of law is involved and invite the circuit court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of cross-motions for summary judgment, however, neither establishes that there is no genuine issue of material fact nor obligates the circuit court to render summary judgment. *Id.*

¶ 52    The circuit court's ruling on a summary judgment motion is subject to *de novo* review, meaning that we perform the same analysis that a trial judge would perform. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004); *Gibbons v. Kowal*, 2024 IL App (1st) 232124, ¶ 24. The construction of an insurance policy is also a question of law, subject to *de novo* review. *Central Illinois Light Co.*, 213 Ill. 2d at 153. See *Certain Underwriters at Lloyd's London v. Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 7 (noting that the "construction of an insurance policy and the determination of contractual rights are questions of law that are appropriately addressed through the summary judgment process").

¶ 53                    *Interpretation of an Insurance Policy*

¶ 54    When construing an insurance policy, the primary function of the court is to ascertain and enforce the parties' intentions as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of words used in the

insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Id.* Accord *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). If the policy language is clear and unambiguous, the words must be given their plain, ordinary, and popular meaning. *Central Illinois Light Co.*, 213 Ill. 2d at 153. If the words used in the policy are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter. *Id.* An insurance policy is not ambiguous merely because the parties disagree as to its meaning. *Id.*

¶ 55                                                 *Cooperation*

¶ 56     As this issue is potentially dispositive, we begin our analysis with the contention raised in ANPAC's cross-appeal, *i.e.*, that Hamilton's "non-cooperation" invalidates ANPAC's coverage obligations. The circuit court found that ANPAC demonstrated that it exercised a reasonable degree of diligence in seeking Hamilton's participation and that, "to a certain extent," Hamilton refused to cooperate. The circuit court ultimately concluded, however, that the undisputed facts showed that ANPAC was not substantially prejudiced in the underlying *Topnick* litigation.

¶ 57     The scope of the duties imposed on the insurer and the insured are defined and controlled by the policy terms. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 191 (1991). "Any condition in the policy requiring cooperation on the part of the insured is one of great importance, and its purpose should be observed." (Internal citations omitted.) *Id.* The object of a cooperation clause is to prevent collusion between the insured and the injured party, as well as to "make possible the insurer's investigation." *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 496 (1977). See *Waste Management, Inc.*, 144 Ill. 2d at 191 (observing that the "basic purpose of a cooperation clause is to protect the *insurer's interests*

and to prevent collusion between the insured and the injured party" (Emphasis in original)).
A cooperation clause in a liability policy is binding on an additional insured, like Hamilton. See
*Perry v. Salseda*, 34 Ill. App. 3d 729, 736 (1975). In an action where the insurer alleges a breach
of a cooperation clause, the burden of proof is on the insurer to prove what constitutes the
breach. *M.F.A. Mutual Insurance Co.*, 66 Ill. 2d at 496.

¶ 58   As an initial matter, we observe that the amended complaint quoted, and its allegations
were based on, the provisions of the ANPAC policy which imposed a duty of cooperation on an
*indemnitee* of the insured, as opposed to the policy provisions which addressed the duties of an
insured, *i.e.*, Hamilton. We agree with Hamilton and Charter Oak that this inconsistency is fatal
to ANPAC's claim regarding Hamilton's alleged non-cooperation, as the amended complaint
fixed the issues in controversy and the theories upon which ANPAC sought recovery. See
*Stonegate Insurance Co. v. All City Towing, Inc.*, 2024 IL App (1st) 221769, ¶ 52. The inclusion
of the ANPAC policy as an exhibit to the amended complaint did not correct the deficiency. See
*Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326, 336
(2002) (expressing concern that an insurer could file a declaratory judgment complaint, attach
the policy, allege one policy exclusion, and then file a motion for summary judgment relying on
a different policy provision to deny coverage). To the extent that the operative complaint did not
plead the correct policy provisions as to this issue, we are compelled to affirm the grant of
summary judgment in favor of Charter Oak as to this claim. *E.g.*, *Illinois State Bar Ass'n v.
Coregis Insurance Co.*, 355 Ill. App. 3d 156, 163 (2004) (noting that "[b]ecause we review the
grant of summary judgment *de novo*, we may affirm the circuit court's decision on any ground in
the record, regardless of whether the court relied on that ground or whether the court's reasoning
was correct").

¶ 59    Even assuming *arguendo* that ANPAC's pleading error could be overlooked, we agree with the circuit court's conclusion that ANPAC was not substantially prejudiced in the *Topnick* litigation. In a typical case, where an insurer may have little knowledge of the facts surrounding a claimed loss, a cooperation clause obligates the insured to disclose the facts within its knowledge and to otherwise aid the insurer in its coverage determination. *Waste Management, Inc.*, 144 Ill. 2d at 204. Such concerns regarding the inaccessibility of information are less pressing in this matter, as Topnick was the employee of ANPAC's insured (Condenser People) and ANPAC issued the applicable workers' compensation policy.

¶ 60    Furthermore, as a matter of public policy, an insurer will not be relieved of its contractual responsibilities vis-à-vis the insured unless the insurer proves that it was substantially prejudiced by the insured's conduct regarding the investigation, presentation, or defense of the case. *Founders Insurance Co. v. Shaikh*, 405 Ill. App. 3d 367, 375 (2010). See *State Farm Mutual Automobile Insurance Co. v. McSpadden*, 88 Ill. App. 3d 1135, 1140 (1980) (noting that "prejudice cannot be assumed"). While ANPAC contends that Charter Oak failed to timely provide the Charter Oak policy, there is no indication that ANPAC's interests were not protected in the *Topnick* litigation. We thus agree with the circuit court that Hamilton's alleged non-cooperation did not invalidate ANPAC's duties vis-à-vis Hamilton, and we turn to the contentions of Hamilton and Charter Oak.

¶ 61                *Primary/Excess Coverage and "Other Insurance" Provisions*

¶ 62    The parties disagree regarding the relative status of their respective policies. ANPAC maintains, and the circuit court agreed, that its policy provided excess coverage. Hamilton and Charter Oak assert that the Charter Oak policy provided excess coverage, based on the policy language and Hamilton's targeted tender to ANPAC.

¶ 63    "Primary insurance coverage is coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of an event that gives rise to liability." *Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 2.  A primary insurer provides "first dollar" coverage up to the policy limits.  *Id.*  In contrast with primary insurance, excess insurance "is a secondary layer which protects an insured when a judgment or settlement exceeds the primary policy's limits of liability."  *Id.*  The excess insurer covers the same risks as the primary insurer, but the excess insurer's " 'liability attaches only after a predetermined amount of primary coverage has been exhausted.' "  *Id.* (quoting *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 738 (1989)).  In other words, an excess policy does not broaden the underlying coverage, but it increases the amount of coverage available for a loss.  *Id.*

¶ 64    In recognition of the possibility of a competing coverage scenario, insurers often incorporate "other insurance" provisions into their policies.  *Putnam v. New Amsterdam Casualty Co.*, 48 Ill. 2d 71, 76 (1970).  "Such provisions have had the effect of reducing multiple recoveries, and have also served thereby to limit the liability of insurers."  *Id.*  "The majority rule for resolving 'other insurance' disputes is that these provisions should be reconciled whenever possible in order to effectuate the intent of the parties, but that the court cannot arbitrarily pick one policy to be read first and undermine the intention of the insurer whose policy is read second."  *Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 17.  In this case, the provisions of the two policies can be reconciled.

¶ 65    The ANPAC policy provides, in part, that "[w]here required by written contract or agreement, this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and/or noncontributing, whichever applies, with this insurance."  The parties agree that no such written

contract or agreement exists in this case. We then turn to the applicable "other insurance" provision, which states, in pertinent part, that "[i]f there is other insurance covering the same loss or damage ***, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance." Based on the foregoing, the ANPAC policy provides for excess coverage with respect to Hamilton's claim.

¶ 66     As to Charter Oak's policy, the "other insurance" provision states, in pertinent part, that the policy is excess to "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." As noted above, however, the other insurance available to Hamilton—*i.e.*, based on its status as an additional insured under the ANPAC policy—was not primary. While Hamilton could have required primary coverage from ANPAC in a written contract or agreement, it did not do so. A separate "Real Estate Property Managed" endorsement to the Charter Oak policy provides: "With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you." The ANPAC insurance, however, is not "collectible" until the limits of the primary policy are exhausted. See *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance*, 227 Ill. 2d 102, 114 (2007). Based on our review of the plain language of the ANPAC and Charter Oak policies, we agree with the circuit court's conclusion that the Charter Oak policy provided primary coverage and the ANPAC policy provided excess coverage.

¶ 67     Hamilton and Charter Oak also maintain that Hamilton made a valid targeted tender of its defense and indemnity to ANPAC. The targeted tender doctrine allows an insured that is covered by multiple and concurrent policies to "target," or select, which insurer will provide a

18

defense and indemnification regarding a particular claim. *River Village I, LLC v. Central Insurance Companies*, 396 Ill. App. 3d 480, 486 (2009). See *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 576 (2000) (noting that "an 'other insurance' provision does not in itself overcome the right of an insured to tender defense of an action to one insurer alone"). "The insured essentially can choose which insurer among his several co-insurers will participate in the claim against him; he can elect one insurer over another, or even deactivate coverage with an insurer he previously selected in order to invoke exclusive coverage with another." *River Village I, LLC*, 396 Ill. App. 3d at 486. The targeted tender doctrine allows an insured to protect its interests, *e.g.*, by keeping its future premiums low or preventing policy cancellation. *Id.*

¶ 68 The Illinois Supreme Court in *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance*, 227 Ill. 2d 102, 116 (2007), however, imposed a significant limitation on the doctrine. Our supreme court found that "targeted tender can be applied to circumstances where concurrent primary insurance coverage exists for additional insureds, but to the extent that defense and indemnity costs exceed the primary limits of the targeted insurer, the deselected insurer or insurers' primary policy must answer for the loss before the insured can seek coverage under an excess policy." *Id.* at 116-17. In other words, the excess coverage may only be targeted by an insured after the primary coverage is exhausted. Given the relative priority of the Charter Oak and ANPAC policies, the targeted tender by Hamilton to ANPAC was invalid.

¶ 69                                    *Charter Oak's Counterclaims*

¶ 70 Hamilton and Charter Oak also challenge the denial of Charter Oak's motion for summary judgment as to their counterclaims for contractual and equitable subrogation. "Subrogation is a method whereby one who has involuntarily paid a debt or claim of another

19

succeeds to the rights of the other with respect to the claim or debt so paid." *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1049 (2000). "One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce." *Id.* Given our determination that the ANPAC policy provided excess coverage, recovery by subrogation was unavailable to Hamilton and Charter Oak. See *id.* (noting that subrogation is available "only where the plaintiff is under a legal obligation to pay the debt of another"). See also *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 317 (2004) (finding no recovery on an equitable contribution claim "because the two policies insured different risks").

¶ 71    Finally, Hamilton and Charter Oak contend that the circuit court erred in denying Charter Oak's motion for summary judgment on count IV of its counterclaim, wherein Charter Oak sought a declaration that ANPAC wrongly took the benefit of Hamilton's contribution claim against Condenser People, *i.e.*, only Charter Oak, as Hamilton's subrogee, was entitled to enforce the right of contribution to the extent of its payment to Topnick. ANPAC responds, in part, that this argument presupposes that Hamilton "should be deemed as a matter of law to have fully prevailed on its (never litigated to resolution) contribution claim" against Condenser People, and that any liability that Hamilton had to Topnick passed through to Condenser People "dollar for dollar." We agree with this assessment; we simply do not (and cannot) know the parties' relative proportions of liability. To the extent that Hamilton and Charter Oak claim that they acquiesced "under duress" to ANPAC's manipulation of the settlement process, the parties' negotiation and inclusion of a reservation of rights in the settlement agreement suggests otherwise. *E.g.*, *Kirincich v. Jimi Construction Co.*, 267 Ill. App. 3d 51, 55 (1994) (noting the "absence of any duplicity on the part of the joint insurer").

¶ 72                            CONCLUSION

¶ 73    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 74    Affirmed.